SHEEHAN *v.* NEW YORK CENTRAL RAILROAD COMPANY

[No. 16,345. Filed May 9, 1940.]

*John W. Lyddick* and *Alex Pendleton,* both of Gary, for appellant.

*W. Allen Sommers* and *Abraham Halleck,* both of Rensselaer, for appellee.

DUDINE, J.—This is an appeal·from a judgment for defendant (appellee here) in a suit instituted by appellant Frank J. Sheehan against appellee, The New York Central Railroad Company to recover damages for injuries allegedly inflicted upon appellant by a fellow passenger while appellant was a passenger on appellee's train.

The issues were formed by a complaint in one paragraph and an answer in general denial. The cause proceeded to trial by a jury but at the close of plaintiff's evidence the court, on appellee's request, instructed the jury to return a verdict in favor of the defendant; the jury returned such verdict and judgment was entered in accordance therewith.

There is but one error assigned upon appeal and that is claimed error in overruling a motion for new

trial which was duly filed by appellant. The causes for new trial properly assigned and discussed in appellant's brief are: (1) Claimed error of the trial court in instructing the jury to return a verdict in favor of the defendant, and (2) the verdict is contrary to law.

Appellant's propositions may be summarized as follows: (1) "A directed verdict for defendant is not proper except where there is total absence of evidence upon some issue essential to plaintiff's right to recover." (2) It is the duty of the carrier to exercise due care in protecting its passengers from violence of their fellow passengers. Both of said propositions are well founded in law. We recognize them as binding upon this court as general principles of law but they are not determinative of this appeal.

> "It may be stated generally that, although common carriers are not insurers of the safety of their passengers, they are in duty bound to protect them from the unprovoked assault or misconduct of a fellow passenger, where the servants of the carrier have knowledge of the existing conditions for a sufficient intervening time between the acquisition of knowledge and the injury to protect their passengers; and this is true where the carrier's servants have reason to anticipate, from the existing conditions, that the safety of the passengers is imperiled by the misconduct of a fellow passenger. (Citing authorities)" *Chicago, etc. R. Co.* v. *Fisher* (1915), 61 Ind. App. 10, 15, 110 N. E. 240.

The evidence in the record consists of the testimony of but two witnesses, to-wit: Appellant and a district claim agent of appellee, both of whom testified as witnesses for appellant. The evidence of the claim agent is clearly irrelevant to the questions presented upon appeal. Appellant's testimony shows the following facts:

On January 7, 1936, at about 6:00 P. M., appellant boarded appellee's train at Gary, Indiana, as a pullman passenger en route to Buffalo, New York. Finding his berth "made up" appellant proceeded to the rear of the train to find the lounge car. The first car that he entered, after leaving his pullman coach, was the dining car. Appellant testified that "the diner was filled with diners . . . a great many of them were young ladies, a few scattered men, and my attention was attracted to two young men who were making a general nuisance of themselves by annoying the passengers, going from one table to another and sorta leaning over the table and making remarks to the other passengers. The waiters were trying to quiet them down and shushing them and said 'You mustn't make so much noise or disturbance' but it apparently wasn't making much effect on the two men."

Appellant returned to the smoking compartment of his pullman coach which compartment was in the end of the coach next to the dining car. He had been reading his paper for about five minutes when he heard a commotion in the rear vestibule of the pullman coach and presently he saw two of the dining car waiters and a trainman "pulling and tugging and shoving each other and they were forcefully ejecting the two men from the dining car . . . (and) putting them into the rear end of the pullman coach in which I had my reservation. . . . (After the two men were in the pullman coach) the two waiters immediately slipped back into the dining car . . . The trainman came into the smoking compartment (where appellant was), straightened up his clothes, and sorta brushed himself off with his hands, . . . (and) said 'They are causing too much trouble. . . . I am going up ahead and report.' He (the trainman) left the smoking com-

partment and started toward the head of the train. A short time after that the two men came into the smoking compartment. They were furious, they were swearing, using obscene language. Finally one of them said 'Well, let's get something and crash that car' . . . (and they left the smoking compartment). They were gone probably three or four minutes and the next thing that attracted my attention was I heard the crash of glass outside of the door in this passage way at the rear end of the (pullman) coach. Immediately thereafter they came back into the smoking compartment . . . The taller of the two had . . . (a) fire extinguisher in his hand. (He engaged in conversation with appellant about his hand, which was bleeding, and then left the compartment.) The other fellow remained (and immediately began abusing appellant, calling him vile names and swearing at him.) I didn't answer any of the things. I had my paper and I raised it up so that I couldn't see his face or he couldn't see mine. . . . While I was in that position (sitting on a bench in the compartment) he struck me on the face and knocked me over sideways on this bench, knocked the paper out of my hands. . . ." The fellow continued his attack and appellant arose to defend himself. The altercation lasted about five minutes and finally appellant knocked his assailant down, thus ending the fracas.

Appellant was asked whether the two young men were intoxicated and his answer was "Well, they were able to walk but they of course did stagger some and the odor of liquor on their breath was very pronounced."

It is the injuries allegedly suffered by appellant as a result of said attack, for which appellant sought damages in this cause of action.

The conduct of the two young men in the diner, that is "making a general nuisance of themselves by . . .

going from one table to another and sorta leaning over the tables and making remarks to the other passengers, etc." including the fact, which we may presume, that their conduct was such that their forced ejectment from the diner was justified, was not such conduct as would cause trainmen under similar circumstances to anticipate that the safety of the passengers in the pullman coach would be imperiled by further misconduct on the part of the two young men. The evidence does not show that the safety of any of the passengers in the dining car was imperiled. In that regard it shows, in effect, only that the two young men were impertinent, rude and annoying. There is no evidence in the record of any threats of violence made by either of them to any other passenger except appellant. The disturbance between appellant and his assailant lasted about ten minutes, and took place after the trainman had gone "ahead" to report the disturbance which had taken place in the dining car, and before he or any other servant of the railroad company returned to the smoking compartment.

We hold that the evidence does not show any failure, upon the part of appellee's servants, to exercise due care to protect appellant from the attack of his fellow passenger.

Appellee contends that the injuries shown by the evidence to have been suffered by appellant as a result of said attack are such as would warrant nominal damages only, if any, and therefore the judgment should not be reversed. There is much merit in appellee's said contention but we need not discuss such question and do not decide it in this opinion.

There being no evidence of negligence upon the part of the servants of appellee Railroad Company in failing to protect appellant from the attack of his fellow pas-

senger, the trial court's instruction to the jury to return a verdict for defendant was proper and the verdict is not contrary to law.

Judgment affirmed.

Curtis, J. Not Participating.

NOTE.—Reported in 27 N. E. (2d) **100.**