## PHARES *v.* CARR ET AL.

[No. 18,263. Filed June 6, 1952. Rehearing denied August · 8, 1952. Transfer denied October 6, 1952.]

598

*C. Ballard Harrison,* of Hammond, and *John E. Hopkins,* of Rensselaer, for appellant.

*Cope J. Hanley,* of Rensselaer; *Bernard A. Petrie;* and *Crumpacker & Friedrich,* both of Hammond, for appellees.

ACHOR, C. J.—Appellant, as plaintiff, brought this action to recover damages for personal injuries suffered by a blow from a golf club swung by a customer of the golf-driving range operated by appellees.

The issues were formed by a complaint charging negligence, an answer, and a reply thereto. These pleadings put into issue (1) the question of appellees' duty to safeguard appellant against the hazard of persons swinging clubs outside the area provided for that purpose, and if there was such a duty whether appellees failed to exercise reasonable care with regard thereto; (2) whether such negligence was a proximate cause of the injury, and (3) whether or not the plaintiff was guilty of contributory negligence.

At the close of plaintiff's evidence, the trial court sustained a motion for a directed verdict and entered judgment for the defendants.

The question in this case having been presented upon sustaining of a motion for a directed verdict at the

conclusion of plaintiff's evidence, it was not within the province of the trial court to weigh the evidence, as is true upon motion for a new trial. *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. 2d 145. Rather, it was the duty of the court under this motion to consider only the evidence favorable to the party against whom the motion was directed and all reasonable inferences deducible therefrom. *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901; *Fox* v. *Jackson* (1946), 116 Ind. App. 390, 64 N. E. 2d 799; *State ex rel. Bowers* v. *Moser* (1944), 222 Ind. 354, 53 N. E. 2d 893; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. 2d 190, 37 N. E. 2d 5.

Also, the rule is well established that unless there was a total lack or failure of substantial evidence and reasonable inferences therefrom of probative value upon at least one essential element of plaintiff's case, the court should not give a peremptory instruction for a directed verdict. *Boyd* v. *Hodson* (1947), 117 Ind. App. 296, 72 N. E. 2d 46; *Boston* v. *C. & O. R. Co.* (1945), 223 Ind. 425, 61 N. E. 2d 326; *State* v. *Robbins* (1943), 221 Ind. 125, 46 N. E. 2d 691; *Sheehan* v. *New York Central Railroad Co.* (1940), 108 Ind. App. 38, 27 N. E. 2d 100; *State* v. *Kubiak* (1936), 210 Ind. 479, 4 N. E. 2d 193.

The essential facts of the case in evidence are as follows: The driving range was on the east of a public highway. A barricaded parking space was immediately adjacent to the highway. To the east of this barricade there was an open grassy space which was bounded on the west by the barricade and on the east by a semi-circular row of 24 tees. The distance from the barricade to the tees was estimated as between

20 and 40 feet. Balls were driven from the tees into a field farther to the east. A shelter, from which an attendant leased balls and clubs, was near the south end of the space between the parking area and the tees. There were benches and chairs in other parts of this "open grassy space" for the convenience of customers and spectators. It was in this area that the accident occurred.

The evidence regarding the general character of such driving ranges is as follows: "By far the biggest percentage (of people) in driving ranges are novices." Proprietors "take precautions in most cases." "Many people are hurt each year by clubs swung off the tees. Several (ranges) have signs, warning: 'Don't swing clubs off the tees' and, in most cases, they are so fenced off that you could not swing off the tees if you wanted to."

The evidence regarding the swinging of clubs off the tees at appellees' driving range is as follows: "Almost every time I have been there I have seen somebody swing . . . outside the rail and any place along the tees back of them or beside them. Sometimes they stepped right out from the shelter and started swinging." Appellee Carr said they "were always having trouble with people swinging clubs off the tees" but he didn't know what he could do about it. There were no signs of warning on the premises, and no instructions regarding the practice of swinging clubs off the tees were given.

The testimony regarding the conduct of Shank, who struck the appellant, and of the appellant herself, in substance is as follows: Shank "selected a club from the rack . . . felt the weight . . . and stepped out . . . and went into a full swing." His back was away from her. When he hit her "the swing was all the way

around." The appellee Josefaski, who was one of the proprietors and the attendant at the time, did not see Shank swing. At the time of the injury, appellant was crossing the "open space" from her parked car for the purpose of joining her husband and friends who were already at the tees. She had never played golf and had visited the driving range only once before as a spectator. Shank's back was to her and she did not see the club in his hands as she attempted to pass him. There were stones and rough places on the ground and she was watching them immediately prior to her being struck.

It is urged that the circumstance of this case brings it within the class of cases which generally hold that under the doctrine of assumed risk, the proprietor of an athletic field or golf course is not liable for damages sustained by participants or spectators by reason of injuries which are reasonably incidental to the particular athletic events. See 138 A. L. R. 541 and 142 A. L. R. 868. We do not so construe the facts in this case. Appellant's injury did not result from participation in an athletic event by either Shank nor the appellant. Furthermore the injury occurred as the result of the negligence on the part of Shank when both he and appellant *were outside the area* provided for active participation of the sport.

Under the rules heretofore enunciated it was the duty of the trial court not to weigh the evidence but to consider only the evidence favorable to appellant and to determine therefrom whether there was any substantial evidence of probative value upon each essential element of appellant's case.

We are not able to say that under the circumstances of the case there was no evidence of probative value

of a duty imposed upon appellees for appellant's safety, or of any negligence on the part of appellees relative thereto. We are, therefore, constrained to conclude that upon this issue the cause should have gone to the jury.

However, appellees further contend that if there were some evidence of probative value of negligence on their part said negligence was not the proximate cause of the injury; that the intervening negligent act of Shank, a third person, was the proximate cause of the injury, and that his negligent act was not reasonably foreseeable by the appellees nor chargeable to them.

Reasonable forseeability is the fundamental test of proximate cause. This rule is not changed by the fact of an intervening act or agency. See 65 C. J. S., Negligence, §264(b), p. 1189. Also, it has been stated that proximate cause is a question for the court only when the facts are plain and undisputable, but if there is some reasonable doubt as to the proximate cause of an injury, it is a question for the jury. See 65 C. J. S., §264(a), p. 1187.

As stated by this court in the case of *McIntosh* v. *Pennsylvania R. Co.* (1941), 111 Ind. App. 550, 559, 38 N. E. 2d 263:

> " '. . . The fundamental test under the doctrine, as determined by the decisions of this State, is the test of forseeability.' We agree with the appellee that under our decisions the fundamental test is the test of forseeability. In the case of *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 413, 8 N. E. 2d 993, the Supreme Court, after analyzing many of the Indiana cases, has this to say: 'As stated above this court has utilized as a practical rule of legal cause the test of forseeability. The result of the holding in the foregoing cases is that if the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by

the plaintiff is one of a class which was reasonably forseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. It is the function of the jury to determine whether the defendant's act is a substantial factor in producing the injury of the plaintiff and whether such injury was reasonably forseeable at the time of the defendant's misconduct.' . . ."

Under the facts before us, we are of the opinion that the issue of proximate cause was a question for the jury.

Likewise, upon the issue of contributory negligence, under the facts before us we can not say that the appellant was guilty of contributory negligence as a matter of law. Therefore, the question was for the determination of the jury. *Heiny, Admx.* v. *Pennsylvania R. Co., supra.*

We conclude, therefore, that the trial court erred in directing a verdict for the appellees.

The judgment is reversed, with directions to sustain appellant's motion for new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 106 N. E. 2d 242.