Cynthia Ann WELCH, Appellant–Plaintiff,

v.

Shawn D. YOUNG, Jordan Young, McCutcheon Youth Baseball League, Inc., Wea Summer Recreation and Wea Summer Recreation Center, Appellees–Defendants.

No. 79A02–1012–CT–1407.

Court of Appeals of Indiana.

Aug. 4, 2011.

---

Frederick R. Hovde, Hovde Dassow & Deets, LLC, Indianapolis, IN, Attorney for Appellant.

John T. Roy, Neha M. Matta, Travelers Staff Counsel Office, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Cynthia Welch was injured when a little league player who was taking practice swings struck her knee with a bat. She sued the player, Jordan Young; the player's father and coach, Shawn Young; McCutcheon Youth Baseball League, Inc.; and Wea Township through Wea Summer Recreation and Wea Summer Recreation Center ("Wea defendants").[1] The Wea defendants and Shawn Young moved for summary judgment, which the court granted.[2] Welch moved to correct error and her motion was denied.

---

1. The Wea defendants own and operate the baseball field.

2. The summary judgment motion does not list Jordan Young or McCutcheon Youth Baseball League, Inc. as movants. The chronological case summary indicates both were served as defendants, and no subsequent entry indicates either defendant was dismissed. Nor does the trial court address in its summary judgment orders the legal status of either defendant, except to note neither was named as a moving party on summary judgment. Ac-

Our Indiana Supreme Court has articulated a new rule for determining liability in cases like the one before us, and there are questions of fact as to where Jordan Young was when he was taking the practice swings and whether the game had started when Welch was injured. Thus, summary judgment was inappropriate under the new standard [3] and we accordingly affirm in part, reverse in part, and remand.[4]

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Welch, the non-moving party, are that Welch's son played in the Wea Summer Recreation little league for a team coached by Shawn Young. Jordan Young, Shawn's eleven-year-old son, was on the same team as Welch's son. Welch described herself as the "team Mom." [5] (App. at 101.)

On May 30, 2007, Welch dropped off her son at the baseball field, then went to a drugstore to buy gum for the team. She returned and began passing out gum to the players. Jordan Young was warming up with practice swings outside the dugout, when his bat hit Welch in the knee.

Welch filed a complaint alleging various theories of liability. Shawn Young and the Wea defendants moved for summary judgment. In an order dated August 10, 2010, the trial court granted summary judgment for all the defendants for various reasons. It noted Welch admitted (1) an action against the coach, Shawn Young, was barred by Ind.Code § 34–13–3–5(b) because his employer, Wea Township, is a governmental entity; and (2) defendants Wea Summer Recreation and Wea Summer Recreation Center were not liable for Jordan Young's negligence. The court also noted Welch had made no argument Shawn Young was liable in an individual capacity.

Welch moved to correct error, arguing she had not conceded the Wea defendants were not liable as a governmental entity or through their employee Shawn Young, and further arguing Shawn Young should remain a defendant in his capacity as coach for the little league team. In its order on the motion to correct error the trial court again granted summary judgment for the defendants, stating Welch was a participant in the event because she was the "Team Mom": "Team Moms can be considered participants in the event. They have a title, a role to perform, and are expected to perform certain duties for the

cordingly, we address only those parties that moved for and were granted summary judgment: Shawn Young and the Wea defendants.

As to Shawn Young and the Wea defendants, we note neither party has explicitly addressed on appeal the basis for their potential tort liability. Both parties' arguments on appeal focused on the actions of Welch and Jordan Young. Welch's complaint alleges Shawn Young was "negligent in the supervision of Jordan," (App. at 119), and was an agent of Wea, but Welch does not explicitly address negligent supervision or agency in her appellate briefs.

3. As explained below, while summary judgment for Shawn Young was inappropriate under our Supreme Court's new standard to the

extent he might be subject to liability based on his relationship to the little league, this summary judgment was not error to the extent he was immune from suit as a Wea Township employee.

4. We heard oral argument June 23, 2011, at Indiana State University in Terre Haute before an audience of Hoosier Girls State participants. We thank the University and Hoosier Girls State for their hospitality and commend counsel on the quality of their advocacy.

5. Welch's affidavit indicated her duty as "team mom" was to find parents to work the concession stand. She "had no responsibilities in connection with any practices or games." (App. at 74.)

team and coaches when they volunteer to assume that role." (*Id.* at 17.) Welch also "incurred the risk of injury when she stood in the area between the dugout and the opening in the fence." (*Id.* at 19.) It found the Wea defendants were not liable because Welch's injury was "due to risks inherent in the sporting event, and [Welch] incurred the risk of such injury as a spectator at the event." (*Id.* at 16.)

On appeal, Welch makes no independent arguments concerning governmental immunity or premises liability. Instead, both parties address Welch's status as either a spectator at or participant in the baseball game, and the implications of her status to the determination whether she incurred the risk of her injury. As explained below, that distinction can no longer serve as a basis for determining negligence in situations such as this.

## DISCUSSION AND DECISION

When reviewing a summary judgment, our standard is the same as it is for the trial court: we determine whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind.2005). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Beck v. City of Evansville*, 842 N.E.2d 856, 860 (Ind.Ct.App.2006), *reh'g denied, trans. denied.* The party appealing a summary judgment, here

Welch, has the burden of persuading us the summary judgment was erroneous. *See Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind.Ct.App.2005), *reh'g denied.*

### 1. *Governmental Immunity*

A lawsuit alleging an employee of a governmental entity acted within the scope of his employment bars an action against the employee personally. Ind.Code § 34–13–3–5(b). For purposes of chapter 34–13–3, an employee is "a person presently or formerly acting on behalf of a governmental entity, whether temporarily or permanently or with or without compensation." Ind.Code § 34–6–2–38.

Welch alleged in her complaint that Shawn Young was an agent of Wea Summer Recreation and was "acting within the scope of that agency." (App. at 119.) In their motion for summary judgment the defendants alleged "Shawn Young is entitled to personal immunity," (*id.* at 92), and they argued in their memorandum in support of the summary judgment motion that an action against him was barred by Ind. Code § 34–13–3–5(b) because as a coach for a Wea Township program, he was an employee of Wea township.

In her response, Welch agreed that "as to [the Wea defendants] only, IC § 34–13–3–5(b) provides that an action against Shawn Young as an employee is barred." (*Id.* at 33.) Accordingly, Welch designated as "Material Issues of Fact" only whether she was a "participant" and whether she incurred the risk of being hit by the bat.

In its order on Welch's motion to correct error, the trial court said, "Shawn Young is dismissed from this part of the action" because he is immune from suit as a governmental employee. (*Id.* at 16.) Later in the same order, the court said Shawn Young was granted summary judgment,

presumably in connection with his relationship to the little league.

■ The defendants argued in their appellate brief that Shawn Young was entitled to personal immunity as an employee of the township. Welch did not address that matter in either her brief or reply brief. We cannot say the trial court erred in dismissing Shawn Young to the extent his potential liability was premised on his status as a Wea Township employee.

## 2. *Breach of Duty*

Both parties' remaining arguments are premised on whether Welch was a "participant" in the little league game when she was injured, or was merely a "spectator." At the time of the briefing, that distinction had implications for the duty of care owed to Welch. But our Indiana Supreme Court's recent decision in *Pfenning v. Lineman,* 947 N.E.2d 392 (Ind.2011), has changed how we assess negligence in this context.

In *Pfenning,* a golf outing was sponsored by a tavern and held at the Elks Country Club. Pfenning, then sixteen years old, attended at the invitation of her grandfather. She was driving a beverage cart on the cart path near the 18th hole when she was struck in the mouth by a golf ball. The ball was a low drive from the sixteenth tee, which was approximately eighty yards from where Pfenning was when she was struck. The drive traveled straight for approximately sixty to seventy yards, then hooked to the left. The golfer sought summary judgment on the ground he could not be liable for negligence when Pfenning was a co-participant in the sporting event and her injuries resulted from an inherent risk of the sport.

The *Pfenning* Court summarized the "diverging approaches" this court had utilized in addressing "the concept of duty in golf liability cases." *Id.* at 398. It ad-

dressed *Parsons v. Arrowhead Golf, Inc.,* 874 N.E.2d 993 (Ind.Ct.App.2007) (plaintiff golfer injured when he stepped from cart path onto the green); *Bowman v. McNary,* 853 N.E.2d 984 (Ind.Ct.App. 2006) (plaintiff golfer injured when struck by club of another golfer taking practice swing); and *Gyuriak v. Millice,* 775 N.E.2d 391 (Ind.Ct.App.2002) (golfer struck in head by another player's errant tee shot), *trans. denied.* All three opinions concluded that a sports participant has no duty to exercise care to protect a *co-participant* from inherent risks of the sport. *Pfenning,* 947 N.E.2d at 399.

The *Pfenning* Court noted we have employed

> differing rationales to support a no-duty rule when analyzing sports injury claims but [have] consistently analyzed the issue of duty by focusing primarily on the injured plaintiff's actual or presumed venturousness in undertaking inherent risks of a sporting activity rather than on the actions of the athlete whose conduct causes the injury.

*Id.* at 400–01.

Similarly, the Court found "[s]ignificant variations" among decisions from other jurisdictions addressing liability for sports injuries. *Id.* at 403. In its survey of approaches from other jurisdictions, the *Pfenning* Court noted:

> Two states, New Hampshire and Arizona, provide enhanced protection from liability for sports participants by focusing not on the element of duty but rather on breach of duty, finding that no breach of duty occurs from the ordinary activities of a sport. *Allen v. Dover Co–Recreational Softball League,* 148 N.H. 407, 419–20, 807 A.2d 1274, 1285–86 (2002) (finding that defendants had a duty "to not create an unreasonable risk of injury," that is, "not to act in an

unreasonable manner that would increase or create a risk of injury outside the range of risks," and that an inaccurate throw that strikes a base runner was "within the ordinary range of activity involved in playing softball which, even if negligent, cannot as a matter of law constitute unreasonable conduct under the circumstances"); *Estes v. Tripson*, 188 Ariz. 93, 95–96, 932 P.2d 1364, 1366–67 (Ariz.Ct.App.1997) [holding a base runner who collided with a catcher did not increase the inherent risks faced by catcher and thus there is no breach of duty as a matter of law].

*Id.* at 402.[6]

The *Pfenning* Court then rejected our "no duty" approach, finding it inconsistent with Indiana's comparative fault system "and its explicit direction that fault' includes assumption of risk and incurred risk." *Id.* at 403. It noted "such considerations of a plaintiff's incurred risk, even if evaluated by an objective standard, cannot be used to support a finding of no duty in a negligence action." *Id.* (citing *Heck v. Robey*, 659 N.E.2d 498, 505 (Ind.1995), and *Smith v. Baxter*, 796 N.E.2d 242, 245 (Ind. 2003)). In contrast, it noted sports injury decisions from this court that have

employed consideration of the "inherent risks" of a sport to justify development of a no-duty rule. We view the evaluation of such inherent risks to be tantamount to an objective consideration of the risk of harm that a plaintiff undertakes and thus unsatisfactory because it violates the Comparative Fault Act and the precedent of this Court.

*Id.*

The *Pfenning* Court reaffirmed that "strong public policy considerations favor the encouragement of participation in athletic activities and the discouragement of excessive litigation of claims by persons who suffer injuries from participants' conduct," so sound policy reasons support enhanced protection against liability to coparticipants in sports events. *Id.* "Athletic activity by its nature involves strenuous and often inexact and imprecise physical activity that may somewhat increase the normal risks attendant to the activities of ordinary life outside the sports arena, but this does not render unreasonable the ordinary conduct involved in such sporting activities." *Id.*

To achieve these policy objectives consistently with statutory and case law, the *Pfenning* Court decided, we must look to "the element of *breach* of duty, which is determined by the reasonableness under the circumstances of the actions of the alleged tortfeasor." *Id.* The Court noted breach of duty, because it involves an evaluation of reasonableness, is usually a question to be determined by the finder of fact in negligence cases. *Id.* However, it held:

in cases involving sports injuries, and in such cases only, we conclude that a limited new rule should apply acknowledging that reasonableness may be found by the court as a matter of law. As noted above, the sports participant engages in physical activity that is often inexact and imprecise and done in close proximity to others, thus creating an enhanced possibility of injury to others. The general nature of the conduct reasonable and appropriate for a participant in a particular sporting activity is usually commonly understood and subject to ascertainment as a matter of law.

---

6. That focus on whether a breach of duty occurred seems most consistent with the new rule in *Pfenning*, 947 N.E.2d at 404 (adopting an approach that "is akin to that taken by the Arizona courts in *Estes* when faced with the Arizona Constitution's explicit declaration that assumption of risk is a question of fact that shall be left to the jury").

*Id.* at 403–04. The Court articulated this rule: "in negligence claims against a participant in a sports activity, if the conduct of such participant is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty." *Id.* at 404. As to the golfer's errant drive that resulted in Pfenning's injury, "such conduct is clearly within the range of ordinary behavior of golfers and thus is reasonable as a matter of law and does not establish the element of breach required for a negligence action." *Id.*

After *Pfenning*, then, the analysis of an injury like that before us is based not on the status of the plaintiff[7] as a participant or spectator, or her incurrence of risk. Rather, the analysis should address whether the conduct of the *defendant* is within the range of ordinary behavior of participants in the sport. *Id.* at 405. If it is, "the conduct is reasonable as a matter of law and does not constitute a breach of duty." *Id.* at 404.

■ Accordingly, our focus is not on whether Welch was a "participant" in the event, but on whether Jordan Young's action—*i.e.*, taking practice swings at the time and place of the injury—was within the range of ordinary behavior of participants in the sport.[8] As there are genuine issues as to whether Jordan Young was inside or outside the baseball field and whether the injury happened before or during the game, that question could not be resolved on summary judgment.

Our Indiana Supreme Court offered little guidance in *Pfenning* as to the meaning of its new rule that "if the conduct of such participant [*i.e.*, the alleged tortfeasor] is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty." *Id.* at 404. However, other courts offer helpful insights. For example, the Supreme Court of New Jersey discussed the importance of examining the specific context of the recreational sport at issue:

7. It appears the decision in *Pfenning* was carefully worded to take the status of the victim out of the equation; it omits references to participants, co-participants, or spectators, and instead refers only to a sports participant's liability to "others." For example, the Court said:

> Because this Court has not previously addressed the issue of a sports participant's liability *to others*, we granted transfer and now affirm summary judgment in favor of the golfer and the Elks but reverse summary judgment as to Whitey's and the grandfather. We reject the concept that a participant in a sporting event owes no duty of care *to protect others* from inherent risks of the sport, but adopt instead the view that summary judgment is proper when *the conduct of a sports participant* is within the range of ordinary behavior of participants in the sport and therefore is reasonable as a matter of law.

947 N.E.2d at 396 (emphasis added).

8. As noted above, Jordan Young and the little league were not named as moving parties in

the summary judgment motion. Welch's lawsuit alleged the various defendants were liable based on Shawn Young's negligent supervision of Jordan Young and his status as an agent of Wea Summer Recreation and the little league. The trial court's summary judgment was premised on various theories including the township's non liability as a governmental entity, and Welch's purported admissions that an action against certain defendants was barred and those defendants were not liable for Jordan Young's negligence. On Welch's motion to correct error, the trial court determined Welch had, in fact, not conceded certain issues, and it addressed two additional questions—whether there is a duty from one participant in a sports activity to another, and whether Welch incurred the risk of her injury. On appeal, the arguments of both parties focused on whether negligence could arise from the actions of Jordan Young. We accordingly address only Jordan's actions.

In many recreational sports, softball included, some amount of physical contact is expected. Physical contact is an inherent or integral part of the game in many sports. The degree of physical contact allowed varies from sport to sport and even from one group of players to another. In addition, the physicality of sports is accompanied by a high level of emotional intensity[, which also varies] from sport to sport and from game to game.

*Crawn v. Campo,* 136 N.J. 494, 643 A.2d 600, 605 (1994) (citations omitted).

The New Hampshire Supreme Court noted a number of factors that may help determine the reasonableness of behavior by participants, sponsors, and organizers of recreational athletics: (1) the nature of the sport involved; (2) the type of contest, *i.e.,* amateur, high school, little league, pick-up, etc.; (3) the ages, physical characteristics, and skills of the participants; (4) the type of equipment involved; and (5) the rules, customs, and practices of the sport, including the types of contact and the level of violence generally accepted. *Allen v. Dover Co–Recreational Softball League,* 148 N.H. 407, 807 A.2d 1274, 1285–86 (2002).

A defendant may be held liable for "creating or countenancing risks other than risks inherent in the sport, or for increasing inherent risks, and in any event will be held liable for *recklessly or intentionally injurious conduct totally outside the range of ordinary activity* involved in the sport." *Id.* (quoting *Foronda ex rel. Estate of Foronda v. Hawaii Int'l Boxing Club,* 96 Hawai'i 51, 25 P.3d 826, 841 (2001)) (emphasis added). A defendant, however, may not be held liable for negligent, or even reckless or intentional, injurious conduct *unless that conduct is outside the range of ordinary activity* involved in the sport. *Id.* To

demonstrate the importance of that context, the *Foronda* court noted "the very acme of achievement for a boxer is to so batter the opponent as to induce a temporary coma—otherwise known as a knockout." *Id.*

*Allen* involved a softball player who was hit in the head by an errantly thrown softball during a co-recreational, slow-pitch softball tournament. The Court affirmed dismissal of the lawsuit, applying the factors it stated above. It noted participation in a softball game generally gives rise to the risk that a player may be struck by a ball that has been hit by a batter or thrown by a fielder. All of the players, including Allen, were adults. The ball used when Allen was injured was designed for use in games played by women, single sex and coed teams, teenage girls and ten- to twelve-year-old boys. The Court noted, "[w]hen fielding the ball . . . a fielder has a duty to not act unreasonably. In other words, the fielder has a duty to not act in a manner outside the range of the ordinary activity involved in playing softball." 807 A.2d at 1286. As "reasonable fielders commonly make errant throws," a fielder cannot be held liable for errant throws that reasonably flow from participation. *Id.*

In *Estes,* another decision our Supreme Court cited in *Pfenning,* Estes was a participant in company softball game. She was playing catcher and was injured when Tripson, a baserunner for the opposing team, accidentally stepped on and broke her leg while trying to score. The court noted Tripson ran the bases in an "ordinary and typical" manner. 932 P.2d at 1367. Estes did not assert Tripson intentionally or recklessly stepped on her leg, nor did she contest the assertion by observers that Tripson tried to avoid her leg. Estes asserted only that Tripson could

have avoided her leg and his failure to do so was negligent.

The *Estes* court disagreed and affirmed summary judgment for Tripson:

> Although we ordinarily leave questions of negligence or unreasonable risk to juries to decide, the courts retain authority to set "outer limits." It is appropriate to do so here. There is no evidence that Tripson did anything as a baserunner to increase or exacerbate the inherent risks that Estes faced as a catcher in a softball game. As a baserunner intent on scoring, Tripson simply did not act negligently—did not *breach* a duty of reasonable care under the circumstances—in failing to perceive or make minute adjustments in his course that might have avoided contact with a catcher attempting to tag him out. To hold otherwise would unreasonably chill participation in recreational sports.

*Id.* (citation omitted).

Welch notes that in another little league in which Jordan Young participated, a batter that was warming up outside the dugout "typically would either be taking cuts outside the dugout with a parent's supervision or another assistant coach." (App. at 40–41.) She alleges the purpose of that supervision was "to make sure that the other kids aren't wandering . . . into harm's way."[9] (*Id.* at 40.) In the little league where Welch was injured, the players were told that if they are "swinging a bat, to know what their surroundings are, know who is around you, because you don't know who is going to be around you when you were swinging a bat." (*Id.* at 45.)

We have found no decisions specifically addressing injuries caused by a baseball batter taking warmup swings, but in *Phares v. Carr,* 122 Ind.App. 597, 106 N.E.2d 242 (1952), we addressed a situation where a golfer injured someone while taking practice swings away from the tee. In *Phares,* we reversed a directed verdict for the golfer and driving range owner. The golfer stepped out of a shelter, selected a golf club, and took a full swing, striking and injuring Phares, who was walking past. The shelter, from which an attendant leased balls and clubs, was near the south end of a space between a parking area and the tees. There were benches and chairs in other parts of the open grassy space for the convenience of customers and spectators.

At the time of the injury, Phares was crossing the open space from her parked car to join friends who were already at the tees. She had never played golf and had visited the driving range only once before as a spectator. The golfer's back was to her and she did not see the club in his hands as she tried to pass him. There were stones and rough places on the ground, and she was watching them immediately before she was struck. The driving range owner said he was "always having trouble with people swinging clubs off the tees" but he didn't know what he could do about it. *Id.* at 601, 106 N.E.2d at 244. There were no warning signs on the premises, and no instructions regarding swinging clubs off the tees.

In *Phares* we did not apply a breach of duty analysis, as did the *Pfenning* Court,

---

**9.** Welch characterizes that testimony as meaning: "At Lions [little league] the only time a player was allowed to swing a bat outside of the playing field and outside the fence surrounding the field was with a parent supervising." (Br. of Appellant at 2.) The testimony to which Welch directs us addressed what was "typically" done when a player was taking practice swings, (App. at 40), and the "verbal communication" about "what was expected of them when they were swinging a bat," (*id.*), but it does not support Welch's statement the players were not "allowed" to swing a bat in that area without supervision.

but instead addressed whether the doctrine of assumed risk applied. Under that doctrine "the proprietor of an athletic field or golf course is not liable for damages sustained by participants or spectators by reason of *injuries which are reasonably incidental to the particular athletic events.*" *Id.* at 602, 106 N.E.2d 242, 244 (emphasis added). The *Phares* determination the injury might not have been "reasonably incidental to the particular athletic events" offers guidance as to the application of the *Pfenning* standard that the conduct of the defendant be within the range of ordinary behavior of participants in the sport.

We noted Phares' injury did not result from participation in an athletic event by either the golfer or Phares—it was the result of the golfer's negligence when both he and Phares *were outside the area* provided for active participation in the sport. *Id.* at 602, 106 N.E.2d at 244. The evidence regarding the general character of such driving ranges was that most people at driving ranges are novices. Many people are hurt each year by clubs swung off the tees. "Several (ranges) have signs warning: Don't swing clubs off the tees' and, in most cases, they are so fenced off that you could not swing off the tees if you wanted to." *Id.* at 601, 106 N.E.2d at 244.

As the trial court was not to weigh the evidence but to consider only the evidence favorable to Phares, and to determine therefrom whether there was any substantial evidence of probative value on each element of Phares' case, the directed verdict for the defendants was error. *Id.*

■ We acknowledge the *Pfenning* "limited new rule . . . that reasonableness may be found by the court as a matter of law," so that "in negligence claims against a participant in a sports activity, if the conduct of such participant is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty." 947 N.E.2d at 404. But in the case before us we are faced with factual issues about "the conduct of [the] participant" that preclude our determination whether, as a matter of law, his conduct was "within the range of ordinary behavior of participants in the sport." *Id.*

Specifically, there are fact issues as to whether the injury took place on the field or outside the playing area, and whether the game was underway or had not yet started. As we cannot be certain from the designated evidence before us whether Welch was injured before or during the game and whether she and Jordan Young were inside the ball field or outside it in an area where spectators normally are present, we cannot determine as a matter of law whether Jordan Young's behavior while taking warmup swings was within the range of ordinary behavior of participants in little league baseball.

As to Jordan Young's location when Welch was injured, Welch presented evidence she was about five or ten feet from the dugout and outside the fenced playing area, in a place where spectators commonly sat. Shawn Young testified people would "walk back and forth from that area" to the concession stand or to the seats behind home plate. (App. at 51.) Welch testified she was hit "[a]s [she] was passing out gum," and she was "outside the field behind the fence that surrounds the field in the area where the spectator's [sic] walk and those with their own chairs sit." (App. at 75.) But Jordan Young testified that when she was passing out gum she was standing at "the door to the dugout . . . sort of right in the threshold." (*Id.* at 61.) The trial court found Welch "incurred the risk of injury when she stood in the *area between the dugout and the*

*opening in the fence." (Id.* at 19) (emphasis added).

Welch testified the game had not yet started. But Shawn Young testified when Welch was hit, Jordan Young was the on-deck batter, the assistant coaches were "out in their base assignments, first and third," (*id.*), and Shawn Young was "doing [his] coaching duties." (*Id.* at 47.) Specifically, Shawn Young testified:

A. I kept book.

Q. Meaning balls and strikes—

A. Correct.

Q. —and hits and the whole thing?

A. Right. Yeah.

(*Id.*) Jordan Young testified his father was in front of the dugout "giving signals." (*Id.* at 54.) He testified that after the incident, he took his turn at bat and finished playing the game. From the testimony that Jordan Young was "on deck," the assistant coaches were at their positions at first and third base, the coach was giving signals and recording balls, strikes, and hits, and Jordan Young took his turn at bat after the incident, a trier of fact could infer the game must have been underway when Welch was hit.

The record before us presents issues of fact that will likely have a bearing on whether Jordan Young's conduct when Welch was injured was within the range of ordinary behavior of participants in little league baseball. We must therefore reverse summary judgment for Young and remand.

Affirmed in part, reversed in part and remanded.

BAKER, J., and NAJAM, J., concur.