**FILED**

May 24 2016, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kenneth G. Doane, Jr.
Doane Law Office, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Richard T. Mullineaux
Crystal G. Rowe
Whitney E. Wood
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tresa Megenity,

*Appellant-Plaintiff,*

v.

David Dunn,

*Appellee-Defendant.*

May 24, 2016

Court of Appeals Case No.
22A04-1506-CT-722

Appeal from the Floyd Superior
Court

The Honorable Maria D. Granger,
Judge

Trial Court Cause No.
22D03-1309-CT-1354

**Najam, Judge.**

## Statement of the Case

[1]    Tresa Megenity appeals the trial court's entry of summary judgment in favor of
David Dunn on Megenity's complaint, in which she alleged that Dunn was
negligent and reckless and proximately caused her serious bodily injury during
a karate practice session.  Megenity presents a single issue for our review,

namely, whether there exists a genuine issue of material fact precluding summary judgment in favor of Dunn.

[2] We reverse and remand for further proceedings.[1]

## Facts and Procedural History

[3] On December 1, 2012, Megenity and Dunn were students at Terry Middleton's karate studio ("the studio"). Megenity had been taking classes there three or four times a week for approximately two years, and she had attained a black belt. Dunn was a newer student and had attained a green belt, which is five levels lower than a black belt.

[4] On December 1, Megenity and Dunn were engaged in a drill called "kicking the bag." Appellant's App. at 68. Approximately sixty students of all levels were engaged in the drill that day, which involved the following: three people (students and/or instructors), forming a triangle with approximately thirty feet between them, holding rectangular bags in front of their bodies; and the students lining up and sprinting to each bag in succession to perform a kick against the bag. The first two bags were for side kicks, and the third bag was for a front kick. A front kick involves a student "balancing on one foot," raising his knee, and kicking "with the heel and snap[ping] back." *Id.* at 66-67. On that date, Megenity had volunteered, as she had "countless" times before, to hold

---

[1] We heard oral argument in this case on March 2, 2016.

the third bag, for the front kick. *Id.* at 69. As a bag-holder, Megenity knew that she had to "brace [her]self to take an impact of the kick," which meant placing her left foot behind her and her "right leg forward to brace for the kick." *Id.*

[5] When it was Dunn's turn to perform the kicks, he performed the first two kicks "as hard as [he] could make them[,]" but without incident. *Id.* at 49. But before kicking the bag Megenity was holding, Terry Middleton "advised [Dunn] to hold back, which [he] did considerably." *Id.* Nevertheless, when Dunn kicked the bag being held by Megenity, instead of keeping one foot on the ground as he kicked, he jumped as he kicked the bag. Megenity was holding the bag in front of her body, including her face, and she did not see the kick. As a result of the kick, Megenity "felt airborne and crashed on the floor[.]" *Id.* at 68. The force of the impact caused Megenity's left knee to "double" and "sheared out" her anterior cruciate ligament ("ACL") and "damaged [her] menisci." *Id.* at 73. Dunn later apologized to her, saying, "I'm sorry. I didn't mean to jump." *Id.* at 72. Megenity underwent surgery and rehabilitation, and she missed several months of work as a result.

[6] On September 11, 2013, Megenity filed a complaint against Dunn alleging that he had "negligently, recklessly, and unreasonably caused" her injuries. *Id.* at 6. Dunn filed an answer and, on November 19, 2014, Dunn filed a summary judgment motion alleging that, under our supreme court's holding in *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011), his conduct was reasonable as a matter of law and did not constitute a breach of duty. In her response to Dunn's summary judgment motion, Megenity alleged that the designated evidence

established a genuine issue of material fact whether Dunn's conduct was unreasonable and outside the range of ordinary behavior of participants in a karate class. Following a hearing, the trial court entered summary judgment in favor of Dunn. This appeal ensued.

## Discussion and Decision

[7] Our standard of review for summary judgment appeals is well established:

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate[] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[8] The parties agree that, because Megenity's injuries stem from a sporting activity, our supreme court's decision in *Pfenning* governs the outcome of this appeal. In *Pfenning*, our supreme court "reject[ed] the concept that a participant in a sporting event owes no duty of care to protect others from inherent risks of the sport, but adopt[ed] instead the view that summary judgment is proper when the conduct of a sports participant is within the range of ordinary behavior of participants in the sport and therefore is reasonable as a matter of law." 947 N.E.2d at 396. In particular, the court held as follows:

> Significant variations . . . can be seen among the decisions from our sister jurisdictions as they wrestle with the issue of liability for sports injuries. In resolving the issue for Indiana, a foremost consideration must be the Indiana General Assembly's enactment of a comparative fault system and its explicit direction that "fault" includes assumption of risk and incurred risk. Ind. Code § 34-6-2-45(b). These concepts focus on a plaintiff's venturousness and require a subjective determination. *Smith*[ *v. Baxter*], 796 N.E.2d [242,] 244[ (Ind. 2003)]. As noted above, decisions of this Court have established that such considerations of a plaintiff's incurred risk, even if evaluated by an objective standard, cannot be used to support a finding of no duty in a negligence action. *See Heck*[ *v. Robey*], 659 N.E.2d [498,] 505 [(Ind. 1995)]; *Smith*, 796 N.E.2d at 245. In contrast, the sports injury decisions of the Court of Appeals have employed consideration of the "inherent risks" of a sport to justify development of a no-duty rule. We view the evaluation of such inherent risks to be tantamount to an objective consideration of the risk of harm that a plaintiff undertakes and thus

unsatisfactory because it violates the Comparative Fault Act and the precedent of this Court.

As to judicial policy, however, we are in agreement with our colleagues in the Court of Appeals and many of the courts of our fellow states that strong public policy considerations favor the encouragement of participation in athletic activities and the discouragement of excessive litigation of claims by persons who suffer injuries from participants' conduct. *See Bowman*[ *v. McNary*], 853 N.E.2d [984,] 991-92 [(Ind. Ct. App. 2006)]; *Mark* [*v. Moser*], 746 N.E.2d [410,] 419 [(Ind. Ct. App. 2001)]. Sound policy reasons support "affording enhanced protection against liability to co-participants in sports events." *Bowman*, 853 N.E.2d at 992. Athletic activity by its nature involves strenuous and often inexact and imprecise physical activity that may somewhat increase the normal risks attendant to the activities of ordinary life outside the sports arena, but this does not render unreasonable the ordinary conduct involved in such sporting activities.

We conclude that sound judicial policy can be achieved within the framework of existing Indiana statutory law and jurisprudence. As noted previously, there are three principal elements in a claim for negligence: duty, breach of duty, and a proximately caused injury. When there is no genuine issue of material fact and any one of these elements is clearly absent, summary judgment is appropriate. *Colen v. Pride Vending Serv.*, 654 N.E.2d 1159, 1162 (Ind. Ct. App. 1995), *trans. denied*. But rather than focusing upon the inherent risks of a sport as a basis for finding no duty, which violates Indiana statutory and decisional law, the same policy objectives can be achieved without inconsistency with statutory and case law by looking to the element of breach of duty, which is determined by the reasonableness under the circumstances of the actions of the alleged tortfeasor. Breach of duty usually involves an evaluation of reasonableness and thus is usually a question to be determined by the finder of fact in negligence cases. *Kroger Co. v. Plonski*, 930

N.E.2d 1, 9 (Ind. 2010); [*N. Ind. Pub. Serv. Co. v.*] *Sharp*, 790 N.E.2d [462,] 466 [(Ind. 2003)]. But in cases involving sports injuries, and in such cases only, we conclude that a limited new rule should apply acknowledging that reasonableness may be found by the court as a matter of law. As noted above, the sports participant engages in physical activity that is often inexact and imprecise and done in close proximity to others, thus creating an enhanced possibility of injury to others. *The general nature of the conduct reasonable and appropriate for a participant in a particular sporting activity is usually commonly understood and subject to ascertainment as a matter of law*. This approach is akin to that taken by the Arizona courts in *Estes* [*v. Tripson*, 932 P.2d 1364, 1367 (Ariz. Ct. App. 1997),] when faced with the Arizona Constitution's explicit declaration that assumption of risk is a question of fact that shall be left to the jury.[]

We hold that, in negligence claims against a participant in a sports activity, if the conduct of such participant is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty.[]

In any sporting activity, however, a participant's particular conduct may exceed the ambit of such reasonableness as a matter of law if the "participant either intentionally caused injury or engaged in [reckless] conduct." *Bowman*, 853 N.E.2d at 988 (quoting *Mark*, 746 N.E.2d at 420). Such intentional or reckless infliction of injury may be found to be a breach of duty.

*Id.* at 403-04 (footnotes omitted, emphasis added).

[9] In *Pfenning*, plaintiff was driving a beverage cart around a golf course when she was suddenly struck in the mouth by a golf ball. *Id.* at 397. Lineman, who was golfing at the same course, hit "a low drive from the sixteenth tee

approximately eighty yards away [from Pfenning]. [Lineman]'s drive traveled straight for approximately sixty to seventy yards and then severely hooked to the left" before it struck Pfenning. *Id.* Pfenning sued Lineman and other defendants, and the trial court entered summary judgment in favor of the defendants. On transfer, our supreme court held that, "[a]s to [Lineman]'s hitting an errant drive which resulted in [Pfenning]'s injury, such conduct is clearly within the range of ordinary behavior of golfers and thus is reasonable as a matter of law and does not establish the element of breach required for a negligence action." *Id.* at 404. The court further found that "whether and how a golfer yells 'fore' in a particular situation cannot be a basis for a claim of negligence, [and] it likewise cannot support a claim of liability based on recklessness." *Id.* at 405.

[10] This court has interpreted and applied the rule in *Pfenning* on two occasions, and we find those opinions instructive here. In *Welch v. Young*, 950 N.E.2d 1283, 1292 (Ind. Ct. App. 2011), a baseball player warming up with a baseball bat struck the plaintiff with the bat, and we held that "factual issues about 'the conduct of [the] participant' . . . preclude[d] our determination whether, as a matter of law, [the defendant's] conduct was 'within the range of ordinary behavior of participants in the sport.'" (Quoting *Pfenning*, 947 N.E.2d at 404). In particular, we held as follows:

> there are fact issues as to whether the injury took place on the field or outside the playing area, and whether the game was underway or had not yet started. As we cannot be certain from the designated evidence before us whether Welch was injured

before or during the game and whether she and Jordan Young were inside the ball field or outside it in an area where spectators normally are present, we cannot determine as a matter of law whether Jordan Young's behavior while taking warmup swings was within the range of ordinary behavior of participants in little league baseball.

*Id.*

[11]  In *Haire v. Parker*, 957 N.E.2d 190, 192 (Ind. Ct. App. 2011), *trans. denied*, Haire was helping a friend with an all-terrain vehicle ("ATV") at an "off road vehicle and motorcycle park" when Parker lost control of his ATV, which went airborne and landed on Haire. After Haire filed a complaint, Parker moved for summary judgment alleging in relevant part that he was entitled to summary judgment under the holding in *Pfenning*. The trial court granted the motion. On appeal, Haire argued that *Pfenning* did not apply because they had not been engaged in an organized sport, but only "recreational ATV usage[.]" *Id.* at 199. We reversed the trial court, holding as follows:

> [E]ven assuming that this case is one "involving sports injuries," we cannot say that the "general nature of the conduct reasonable and appropriate for a participant" in ATV riding "is usually commonly understood and subject to ascertainment as a matter of law." [*Pfenning*, 947 N.E.2d] at 403-04. Specifically, we cannot say as a matter of law and Parker does not direct our attention to any designated evidence suggesting that his conduct of starting his ATV while standing beside it after the ATV had "tipped over" was conduct within the range of ordinary behavior of participants in the sport and reasonable as a matter of law. Appellants' App[.] at 143. Accordingly, we conclude that an issue of fact exists as to whether Parker's actions constituted a

breach of duty and that the trial court erred in granting Parker's motion for summary judgment.

*Id.* at 201.

[12] Thus, this court has applied the rule in *Pfenning* to mean that a breach may not be found as a matter of law in every sporting activity-related summary judgment case. Rather, the designated evidence must support such a determination, as we held in *Welch*, and the ordinary behavior of participants in a sport must be commonly understood, as we held in *Haire*.

[13] Our analysis here turns on the issue of whether what constitutes reasonable and appropriate conduct in a karate class is "commonly understood" and can be determined as a matter of law. *See Pfenning*, 947 N.E.2d at 403-04. We observe that, unlike baseball, football, basketball, or golf, as likely examples, karate is not a sport with which most Americans are familiar, either through personal participation or through enjoyment as a spectator. While in *Pfenning*, the court held that a golfer's errant drive was "clearly within the range of ordinary behavior of golfers and thus is reasonable as a matter of law," 947 N.E.2d at 404, we cannot say that the common understanding of karate includes detailed knowledge of the types of kicks that are within the range of ordinary behavior for a particular exercise.

[14] Dunn designated evidence in support of his contention that jump kicks are within the ordinary behavior of a karate student engaged in some types of practice drills. But Megenity presented designated evidence to show that this

particular kick in these particular circumstances was outside the range of ordinary behavior. In particular, Megenity testified that: Dunn was supposed to perform a front kick, which involves keeping one foot on the floor while the kicking foot strikes the bag; Megenity had held bags during kicking-the-bag drills "countless" times during her time at the studio without incident, and she knew how to brace herself for a front kick; Dunn apologized for jumping during the kick; she inferred from Dunn's apology that he had performed a jump kick, which "is where you run and . . . spring off of your body before you do the kick into the bag"; the difference in impact between a running front kick and a jump kick is "[e]xponential"; "[j]ump kicks [had] nothing to do with [the kicking-the-bag drill]"; jump kicks are "always done into the air," not with another person; and jump kicks were "not done" in the course of normal conduct for the class. Appellant's App. at 69, 78. In sum, Megenity, who holds a black belt, testified that Dunn had performed a jump kick and that a jump kick directed toward another person is unreasonable, inappropriate, and not within the range of a karate participant's ordinary behavior, whether in practice or in competition.

[15] We hold that the "general nature of the conduct reasonable and appropriate for a participant" in a karate practice drill is not "commonly understood and subject to ascertainment as a matter of law." *See Pfenning*, 947 N.E.2d at 403-04. And Megenity has designated evidence to establish a genuine issue of material fact whether Dunn's kick was a jump kick and, if so, whether such a kick was outside the range of ordinary behavior for a karate student engaged in a kicking-the-bag practice drill. Accordingly, we cannot say that Dunn did not

breach his duty of care to Megenity as a matter of law, and the trial court erred when it entered summary judgment in favor of Dunn.

[16] Reversed and remanded for further proceedings.

May, J., concurs.

Riley, J., dissents with separate opinion.

| | |
|---|---|
| Tresa Megenity, | Court of Appeals Case No. |
| *Appellant-Plaintiff,* | 22A04-1506-CT-722 |
| v. | |
| David Dunn, | |
| *Appellee-Defendant.* | |

**Riley, Judge dissenting**

I respectfully dissent from the majority's decision reversing the trial court's summary judgment and holding that a genuine issue of material fact exists as to whether Dunn's kick "was outside the range of ordinary behavior for a karate student engaged in a kicking-the-bag practice drill." (Slip op. p. 11).

[18] As noted by the majority, our supreme court's seminal decision in *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011), addressed the duty of care owed by participants in athletic events. Rejecting the concept that a participant in a sporting event owes no duty of care to protect others from inherent risks of the sport, our supreme court adopted the rule that "if the conduct of such participant is within the range of ordinary behavior of participants *in the sport*, the conduct is reasonable and does not constitute a breach of duty." *Id*. at 404 (emphasis added). "The general nature of the conduct reasonable and appropriate for a participant in a particular sporting activity is usually commonly understood and subject to ascertainment as a matter of law." *Id*. at 403-04. In the facts before it, the *Pfenning* court opined that hitting an "errant drive" represents conduct "clearly within the range of ordinary behavior of golfers[.]" *Id*. at 404.

[19] Applying *Pfenning* and its progeny, the majority then analyses whether Dunn's particular kick was outside the range of ordinary behavior under the particular circumstances before this court and concluded that "the general nature of the conduct reasonable and appropriate for a participant in a *karate practice drill* is not commonly understood and subject to ascertainment as a matter of law." (Slip op. p. 11) (quoting *Pfenning*, 947 N.E.2d at 403-04) (emphasis added). I disagree with the majority's analysis as it represents a more narrow rule than our supreme court proposed in *Pfenning*.

[20] As *Pfenning* noted, a "sports participant engages in physical activity that is often inexact and imprecise and done in close proximity to others[.]" *Id*. at 403.

Even though no Indiana case has addressed sport injuries as a result of participating in karate, the sport is generally commonly understood as a high contact sport, involving throws, strikes, and other techniques encouraging physical contact between the participants. Most sports acknowledge that mistakes will happen and Megenity and Dunn understood this when they signed their application for membership in the studio by acknowledging that "[c]aution must be used while participating in this program." (Appellant's App. p. 99). As such, Megenity was instructed in the proper foot placement to safely absorb the impact of the kick during the kicking-the-bag practice drill, which was conducted with participants versed in different skill levels.

[21] "Athletic activity by its nature involves strenuous and often inexact and imprecise physical activity that may somewhat increase the normal risks attendant to the activities of ordinary life outside the sports arena, but this does not render unreasonable the ordinary conduct involved in such sporting activities." *Id*. at 403. By focusing on whether Dunn's particular kick was "outside the range of ordinary behavior for a karate student engaged in a *kicking-the-bag practice drill*," the majority limits its review to the particular exercise instead of the broader scope of the sport of karate, as instructed by *Pfenning*. (Slip op. p. 11) (emphasis added). Although *Pfenning* noted that "strong public policy considerations favor the encouragement of participation in athletic activities and the discouragement of excessive litigation of claims by persons who suffer injuries from participants' conduct," the majority opens the door again to a fact sensitive inquiry in every sports negligence case as to the

exactness and preciseness of a particular exercise within that broader sport. *Id.* at 403.

[22] Based on the facts before me, I would conclude that Dunn's conduct was within the ordinary range of behavior of participants in karate and would affirm the trial court's summary judgment in favor of Dunn.