ATTORNEY FOR APPELLANT
Kenneth G. Doane, Jr.
Doane Law Office, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE
Richard T. Mullineaux
Crystal G. Rowe
Whitney E. Wood
Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

_____

# In the
# Indiana Supreme Court

FILED
Feb 16 2017, 10:15 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

_____

No. 22S04-1609-CT-465

TRESA MEGENITY,

*Appellant (Plaintiff below),*

v.

DAVID DUNN,

*Appellee (Defendant below).*

_____

Appeal from the Floyd Superior Court 3, No. 22D03-1309-CT-1354
The Honorable Maria D. Granger, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 22A04-1506-CT-722

_____

**February 16, 2017**

**Rush, Chief Justice.**

Our decision in Pfenning v. Lineman, 947 N.E.2d 392 (Ind. 2011), established a limited new rule: Indiana courts do not referee disputes arising from ordinary sports activity. Instead, as a matter of law, when a sports participant injures someone while engaging in conduct ordinary in the sport—and without intent or recklessness—the participant does not breach a duty. Id. at 404. Today we clarify that under Pfenning ordinary conduct in the sport turns on the sport generally—not the specific activity.

Here, during a karate class drill, David Dunn jump-kicked a bag, injuring Tresa Megenity, who was holding the bag. Since jump kicks are ordinary in the sport of karate generally, and no evidence supports intent or recklessness, Megenity cannot show breach as a matter of law. We thus affirm summary judgment for Dunn.

**Facts and Procedural History**

For two years, Tresa Megenity faithfully attended karate classes at a studio in southern Indiana, climbing the ranks until she earned her black belt. One Saturday, she attended a sixty-person class, open to all belt levels, that focused on nunchucks, sticks, sparring, and kicking.

During the class, the students gathered to do a drill called "kicking-the-bag." Three volunteers, standing thirty feet apart in a triangle, held the bags. The students lined up and took turns sprinting to each bag and practicing a certain kick. The first two bags were for side kicks, and the last bag was for flying kicks.

Megenity volunteered, as she had "countless" times before, to hold the flying-kick bag. To do a flying kick, one runs to the bag and kicks it with one foot while keeping the other foot grounded. Megenity later recounted that she would "obviously" feel an impact—indeed, even before her first class, she had acknowledged in a waiver that karate can be a "contact sport" involving a variety of physical strikes. So, she braced herself, gripping the bag and planting one foot firmly behind her.

Meanwhile, green-belt David Dunn—a lower-ranked classmate and stranger to Megenity—made his rounds among the bags. He did proper side kicks against the first two bags, then began sprinting to Megenity's station. But instead of keeping one foot grounded during his kick, Dunn allowed both feet to leave the ground, executing what Megenity called a "jump kick." And although the jump kick hit the padded bag—not Megenity—the impact was "extreme," sending Megenity flying and crashing to the floor, injuring her knee. Dunn promptly apologized, saying he "didn't mean to jump." Megenity required surgery and months of physical therapy.

Megenity sued Dunn, alleging he "negligently, recklessly, and unreasonably" injured her. Dunn moved for summary judgment, arguing that under Pfenning, he breached no duty as a matter of law because jump kicks are "ordinary behavior" within the sport of karate generally. In response, Megenity agreed that Pfenning controlled but argued that a genuine issue of material

fact remained as to breach, since a jump kick is "never done" within the specific drill being performed. The trial court granted summary judgment for Dunn, noting that the jump kick was "ordinary behavior of participants in karate within the context of a 'kicking the bag' drill."

Megenity appealed, and a divided panel of the Court of Appeals reversed summary judgment because (1) the "'general nature of the conduct reasonable and appropriate for a participant' *in a karate practice drill* is not 'commonly understood and subject to ascertainment as a matter of law'" and (2) questions of fact remained as to whether Dunn's jump kick breached a duty. Megenity v. Dunn, 55 N.E.3d 367, 373 (Ind. Ct. App. 2016) (emphasis added) (quoting Pfenning, 947 N.E.2d at 403–04). Judge Riley dissented, believing that jump kicks are ordinary behavior within *karate as a whole*. Id. at 374 (Riley, J., dissenting).

We granted Dunn's petition to transfer, thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

When reviewing summary judgment, we apply the same standard as the trial court: summary judgment is proper only when the designated evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014). And when a motion for summary judgment raises questions of law, we review them de novo. Rogers v. Martin, 63 N.E.3d 316, 320 (Ind. 2016).

## Discussion and Decision

To prevail on her negligence claim, Megenity must prove Dunn (1) owed her a duty, (2) breached that duty, and (3) proximately caused her injury. Goodwin v. Yeakle's Sports Bar & Grill, Inc., 62 N.E.3d 384, 386 (Ind. 2016). Here, the parties dispute only whether Dunn's conduct breached his duty of reasonable care to Megenity.

Although breach is usually a question of fact for the jury, Pfenning created a "limited new rule" applying only to sports-injury cases—cases where the alleged tortfeasor is a sports participant. 947 N.E.2d at 403–04. Specifically, we held that a sports participant breaches no duty as a matter of law by engaging in conduct "ordinary . . . in the sport," but may breach a duty by injuring someone intentionally or recklessly. Id. at 404. Applying that framework here, we find no breach

3

as a matter of law because Dunn's jump kick was ordinary within the sport of karate as a whole and no evidence suggests intent or recklessness.

I.      **Looking to Karate Generally, and Not This Specific Drill, Dunn Breached No Duty as a Matter of Law Because Jump Kicks Are Ordinary in the Sport of Karate.**

The parties agree that a sports participant breaches no duty as a matter of law by engaging in "ordinary conduct." But they disagree on whether "ordinary" looks to the sport *generally* or the activity *specifically*. Dunn looks to karate generally and concludes the jump kick was ordinary. But Megenity looks to the kicking-the-bag drill specifically and concludes the jump kick was *extra*ordinary. We agree with Dunn: ordinary behavior turns on the sport generally—and under this standard, jump kicks are indeed ordinary within the sport of karate.

We begin our analysis with Pfenning—a seminal decision in Indiana's sports-injury jurisprudence. There, a teenage beverage-cart operator sued a golfer for hitting her with an errant drive without yelling "fore." 947 N.E.2d at 397. On appeal, we wrestled with an issue of first impression: given that sports are often imprecise and physically intense, when are sports participants liable to others? See id. at 396. We first surveyed approaches taken by our Court of Appeals and other jurisdictions. Some courts, like our Court of Appeals, fashioned a no-duty rule rooted in assumption of risk. Id. at 400–01. Some created a no-duty rule rooted in public policy. Id. at 401. Others left the traditional negligence elements intact. Id. at 402. And still others zeroed in on the element of breach, holding that, in certain circumstances, a sports participant commits no breach as a matter of law. Id.

After studying that landscape, we too focused on the element of breach, which turns on the reasonableness of the defendant's conduct. Id. at 403. We noted that what is reasonable in sports— a context often fraught with imprecise movement—tends to be unreasonable elsewhere. Id. And since athletic activity is to be encouraged—not chilled by the threat of litigation—a limited new rule was warranted. Id. Specifically, we held that, as a matter of law, a sports participant commits no breach by engaging in conduct "within the range of ordinary behavior of participants *in the sport*." Id. at 404 (emphasis added).

But what does "in the sport" mean? In other words, when evaluating what is "ordinary," what context matters—the sport generally, or the activity specifically? That question has divided the parties here and several panels of our Court of Appeals. One approach looks to the sport

4

generally, finding no breach as a matter of law when the participant's conduct is ordinary in the sport as a whole. See, e.g., Wooten v. Caesars Riverboat Casino, LLC, 63 N.E.3d 1069, 1076 (Ind. Ct. App. 2016) (framing the issue as whether golf-cart collisions are ordinary in golf generally); Welch v. Young, 950 N.E.2d 1283, 1292 (Ind. Ct. App. 2011) (framing the issue as whether taking warmup swings is ordinary in little-league baseball generally). The other approach, though—taken by the Court of Appeals here—reviews the activity specifically. See Megenity, 55 N.E.3d at 373.

Today we clarify that, under the reasoning of Pfenning, ordinary behavior turns on the sport generally—not the specific activity. Again, the issue in Pfenning was whether hitting an errant golf drive without yelling "fore" was "ordinary behavior." 947 N.E.2d at 404. In addressing that, Pfenning did not get stuck in the rough, scrutinizing the specifics of that shot—whether it was ordinary given the type of golf outing (a scramble, not the Masters), the particular course, the club used, or the weather conditions. Instead, it looked to "the sport" of golf overall—whether hitting inaccurate drives without yelling "fore" is "ordinary behavior *of golfers*." Id. (emphasis added). The answer was "yes." In golf, hitting errant shots without warning bystanders, though bad etiquette, is ordinary in the sport overall. Id. at 404–05.

And that broad, sport-centric focus makes sense. Generally speaking, sports are imprecise and physically intense. And when Hoosiers play sports—performing activities ordinary in that context—they should not fear that judges will later armchair-quarterback their every movement. After all, judges are more likely to have *general* sports knowledge than *specific* sports expertise. See id. at 403–04 (noting that the "general nature" of ordinary conduct in a sport is "usually commonly understood"). We need not, and should not, parse nuances of the exact angle of entry of a soccer player's slide tackle, the exact timing of a football player's late hit—or the sensei's exact instructions for a karate student's kick—to determine whether they were "ordinary" sports conduct.

Thus, adjusting our focus to the sport of karate overall, we conclude that Dunn's jump kick was ordinary, even if it was contrary to protocol for the kicking-the-bag drill. Karate is a high-contact sport. It comprises a rich variety of punches, blocks, and kicks—including front kicks, back kicks, side kicks, and jump kicks. Indeed, even Megenity recognizes this, conceding that jump kicks are

not just part of the sport, but necessary to advance in rank. We thus hold as a matter of law that Dunn did not breach a duty by simply executing a jump kick while engaged in karate.

But, of course, that does not mean that those injured by sports participants have no recourse. As Pfenning noted, they can survive a motion for summary judgment by presenting evidence of "intentional or reckless infliction of injury." Id. at 404. We now address whether Megenity did so.

## II.    Megenity Presented No Evidence of Intentional or Reckless Infliction of Injury.

Megenity admits Dunn did not injure her intentionally but argues he was reckless, pointing to three parts of her deposition testimony: (1) the kick broke the rules of the drill, (2) the kick's impact was extreme, and (3) Dunn apologized. Dunn responds that none of that adds up to recklessness because nothing shows that he jump-kicked while consciously disregarding Megenity's safety or that his particular conduct fell totally outside the range of ordinary conduct in karate overall. Here too, we agree with Dunn.

Pfenning narrowed liability in sports-injury cases but did not abolish it. We left liability on the table for "intentional and reckless infliction of injury." Id. And since we have never—even in Pfenning—defined those concepts, we take this opportunity to clarify Indiana's tests.

In Indiana, intentional infliction of sports injury has two elements. First, the defendant sports participant must either desire to cause the consequences of his act or believe those consequences are substantially certain to result. Mark v. Moser, 746 N.E.2d 410, 422 (Ind. Ct. App. 2001) (citing Restatement (Second) of Torts § 8A (Am. Law Inst. 1965)), disapproved on other grounds by Pfenning, 947 N.E.2d 392. And second, that intent to injure must fall "totally outside the range of ordinary activity involved in the sport" overall. See Welch, 950 N.E.2d at 1290 (emphasis omitted) (quoting Allen v. Dover Co-Recreational Softball League, 807 A.2d 1274, 1285 (N.H. 2002)). This element is important because, for better or worse, some sports ordinarily involve intent to injure. In boxing, for example, the "very acme of achievement . . . is to so batter the opponent as to induce a temporary coma—otherwise known as a knockout." Foronda ex rel. Estate of Foronda v. Haw. Int'l Boxing Club, 25 P.3d 826, 841 (Haw. Ct. App. 2001). But again, Megenity concedes Dunn did not injure her intentionally.

6

We therefore turn to the three elements of sports recklessness. First, to behave recklessly, the defendant sports participant must intentionally act or intentionally fail to act. See Mark, 746 N.E.2d at 422 (quoting Restatement (Second) of Torts § 500 (Am. Law Inst. 1965)). Second, in doing so, the defendant must be consciously indifferent to the plaintiff's safety. See Bowman ex rel. Bowman v. McNary, 853 N.E.2d 984, 995 (Ind. Ct. App. 2006), disapproved on other grounds by Pfenning, 947 N.E.2d 392. And third, the defendant's particular conduct—including state of mind—must fall "totally outside the range of ordinary activity involved in the sport." See Welch, 950 N.E.2d at 1290 (emphasis omitted); Mark, 746 N.E.2d at 420. As with intent, this last element is crucial because some sports—like boxing and mixed martial arts—depend on actions that would be reckless in many other contexts. See Daniel E. Lazaroff, Torts & Sports: Participant Liability to Co-Participants for Injuries Sustained During Competition, 7 U. Miami Ent. & Sports L. Rev. 191, 213 (1990); Ulysses S. Wilson, Comment, The Standard of Care Between Coparticipants in Mixed Martial Arts: Why Recklessness Should 'Submit' to the Ordinary Negligence Standard, 20 Widener L.J. 375, 382 n.42 (2011) (noting that Ultimate Fighting Championship rules "permit a fighter to continue fighting until stopped by the referee").

Here, even if we assume for purposes of summary judgment that the first element is satisfied—that Dunn jump-kicked intentionally—the second and third elements are missing. True, Dunn failed to keep one foot grounded during the kick; he used "extreme" force against a padded bag; and he later apologized, saying he "didn't mean to jump." But none of that shows he *consciously disregarded* his classmate's safety. And without such conscious disregard, nothing took Dunn's jump kick totally outside the range of ordinary behavior in karate overall. Certainly, Indiana strongly prefers trials, even when a plaintiff's evidence is dubious. Hughley, 15 N.E.3d at 1004–05. Yet here, the evidence Megenity needs is not merely thin; it is absent.

We do note that different evidence might write a different story. Megenity might have had sufficient circumstantial evidence of conscious disregard if Dunn had directed his jump kick at her head instead of the padded bag. But Dunn's errant kick, without more, is not reckless. Rather, it is part of the sport.

## Conclusion

Like the wayward drive in Pfenning, Dunn's jump kick may reflect poor technique or faulty

execution. But it was ordinary conduct in the sport of karate generally, and no evidence shows intent or recklessness. We therefore find no breach as a matter of law and affirm summary judgment.

Rucker, David, Massa, and Slaughter, JJ., concur.