

**FILED**

Sep 29 2020, 9:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Daniel H. Pfeifer
James P. Barth
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Jonathan L. Mayes
Philip R. Zimmerly
Sarah T. Parks
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of C.G. (Minor Child) | September 29, 2020 |
| and | Court of Appeals Case No. 20A-CT-526 |
| David Gutelius (Father) and Lori Gutelius (Mother), | Appeal from the St. Joseph Superior Court |
| *Appellants-Plaintiffs,* | The Honorable David C. Chapleau, Judge |
| v. | Trial Court Cause No. 71D06-1904-CT-126 |
| Union North United School Corporation, | |
| *Appellee-Defendant.* | |

**Tavitas, Judge.**

# Case Summary

C.G., a minor by and through her parents, David Gutelius ("David") and Lori Gutelius ("Lori"), appeals the trial court's grant of summary judgment to Union North United School Corporation ("School Corporation"). We affirm.

# Issue

C.G. raises one issue, which we restate as whether the trial court properly granted the School Corporation's motion for summary judgment.

# Facts

On October 26, 2017, C.G. was a freshman and attended basketball practice at LaVille High School.[1] The basketball coach, Hannah Amor ("Coach Amor"), was conducting a practice drill with the players. As the players practiced shooting layups, Coach Amor defended the goal and attempted to aggressively block or "swat" the player's ball. Appellant's App. Vol. II p. 31. As C.G. was running on the side of the basketball court to receive a ball, Coach Amor

---

[1] We note that C.G. and Lori signed a Consent & Release Certificate ("Release") that provided:

> I know that athletic participation is a privilege. I know of the risks involved in athletic participation, understand that serious injury, and even death, is possible in such participation, and choose to accept such risks. I voluntarily accept any and all responsibility for my own safety and welfare while participating in athletics, with full understanding of the risks involved, and agree to release and hold harmless my school, the schools involved and the IHSAA of and from any and all responsibility and liability, including any from their own negligence, for any injury or claim resulting from such athletic participation and agree to take no legal action against my school, the schools involved or the IHSAA because of any accident or mishap involving my athletic participation.

Appellant's App. Vol. II p. 35. The parties, however, do not mention this Release in their analysis of the issues. Accordingly, we express no opinion as to the Release's impact on C.G.'s claim.

blocked a layup by one of C.G.'s teammates. The ball "blindsided" C.G. and struck her on the temple, causing a concussion. *Id.* at 30. C.G. does not believe that Coach Amor struck her with the basketball intentionally. C.G. acknowledged in her deposition that getting hit on the head with a basketball was "a possible outcome of playing." *Id.* at 32.

[4]    In April 2019, C.G. filed a complaint against the School Corporation, which C.G. amended in September 2019. C.G. alleged that she suffered injuries as a result of the negligence of the School Corporation's employee, Coach Amor. In November 2019, the School Corporation filed a motion for summary judgment. The School Corporation argued that it was entitled to summary judgment pursuant to *Megenity v. Dunn*, 68 N.E.3d 1080 (Ind. 2017), and *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011), because "blocking a basketball shot is well within the ordinary conduct expected in basketball." *Id.* at 21. In response, C.G. argued that: there is an exception for intentional or reckless actions; and whether Coach Amor's actions were reckless is a question of fact for the jury to determine.

[5]    After a hearing, the trial court entered summary judgment for the School Corporation. The trial court found that Coach Amor "did not breach any duty to [C.G.] by blocking the shot" and that C.G. could not satisfy the factors necessary to demonstrate reckless conduct. *Id.* at 12-13. C.G. now appeals.

# Analysis

[6] C.G. challenges the trial court's entry of summary judgment in favor of the School Corporation. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 629 (Ind. 2018); *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the nonmoving party to designate appropriate evidence to demonstrate the actual existence of a genuine issue of material fact. *Schoettmer v. Wright*, 992 N.E.2d 702, 705-06 (Ind. 2013). When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.* "We limit our review to the materials designated at the trial level." *Gunderson v. State, Indiana Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*.

[7] The issue here is whether Coach Amor's conduct breached her duty of reasonable care to C.G. and the School Corporation is liable under the doctrine of respondeat superior. "[T]o prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). Thus, C.G. was required to prove that: (1) Coach Amor owed C.G. a duty, (2) Coach Amor

breached that duty, and (3) the breach of duty proximately caused C.G.'s injury. *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017). Under the doctrine of respondeat superior, an employer is liable for employees' tortious acts where those acts occurred within the scope of employment. *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018).

[8] Whether a party breached a duty is "usually a question of fact for the jury." *Megenity*, 68 N.E.3d at 1083. Our Supreme Court, however, has created a "'limited new rule' applying only to sports-injury cases—cases where the alleged tortfeasor is a sports participant." *Id.* (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 403-04 (Ind. 2011)). The Court held that "a sports participant breaches no duty as a matter of law by engaging in conduct 'ordinary . . . in the sport,' but may breach a duty by injuring someone intentionally or recklessly." *Id.* (quoting *Pfenning*, 947 N.E.2d at 404).

[9] To prove an *intentional* infliction of a sports injury, the plaintiff must demonstrate that: (1) the defendant sports participant either desired to cause the consequences of his act or believed those consequences were substantially certain to result; and (2) the intent to injure falls "'totally outside the range of ordinary activity involved in the sport' overall." *Id.* at 1085 (quoting *Welch v. Young*, 950 N.E.2d 1283, 1290 (Ind. Ct. App. 2011)).

[10] To prove a *reckless* infliction of a sports injury, the plaintiff must demonstrate that: (1) the defendant sports participant intentionally acted or intentionally failed to act; (2) in doing so, the defendant was consciously indifferent to the

plaintiff's safety; and (3) the defendant's particular conduct—including state of mind—falls "'totally outside the range of ordinary activity involved in the sport.'" *Id.* (quoting *Welch*, 950 N.E.2d at 1290).

[11] Our Supreme Court applied the *Pfenning* formulation in *Megenity*, where Tresa Megenity was attending a karate class and was injured when she volunteered to hold the flying-kick bag during practice drills. Another student in the class, Dunn, performed a "jump kick", rather than a flying kick, which sent Megenity "flying and crashing to the floor, injuring her knee." *Id.* at 1082. Megenity filed a complaint against Dunn and argued that he "negligently, recklessly, and unreasonably" injured her. *Id.* The trial court, however, granted summary judgment to Dunn because "the jump kick was 'ordinary behavior of participants in karate within the context of a 'kicking the bag' drill." *Id.*

[12] On appeal, Dunn argued that he was entitled to the protections announced in *Pfenning* because a jump kick is "ordinary" in karate generally. *Id.* at 1083. Megenity, however, argued that Dunn's actions were not "ordinary conduct" because a jump kick was "*extra*ordinary" in a kicking-the-bag drill specifically. *Id.* (emphasis in original). Our Supreme Court held "that, under the reasoning of *Pfenning*, ordinary behavior turns on the sport generally—not the specific activity." *Id.* at 1084. Accordingly, Dunn's "jump kick was ordinary, even if it was contrary to protocol for the kicking-the-bag drill." *Id.* The Court concluded that, as a matter of law, Dunn "did not breach a duty by simply executing a jump kick while engaged in karate." *Id.* at 1085.

[13]     The Court then considered whether Megenity presented evidence of "intentional or reckless infliction of injury." *Id.* Megenity conceded that the student did not injure her "intentionally." *Id.* As for whether Megenity presented evidence of reckless infliction of injury, the Court held:

> [E]ven if we assume for purposes of summary judgment that the first element is satisfied—that Dunn jump-kicked intentionally—the second and third elements are missing. True, Dunn failed to keep one foot grounded during the kick; he used "extreme" force against a padded bag; and he later apologized, saying he "didn't mean to jump." But none of that shows he consciously disregarded his classmate's safety. And without such conscious disregard, nothing took Dunn's jump kick totally outside the range of ordinary behavior in karate overall. Certainly, Indiana strongly prefers trials, even when a plaintiff's evidence is dubious. Yet here, the evidence Megenity needs is not merely thin; it is absent.
>
> We do note that different evidence might write a different story. Megenity might have had sufficient circumstantial evidence of conscious disregard if Dunn had directed his jump kick at her head instead of the padded bag. But Dunn's errant kick, without more, is not reckless. Rather, it is part of the sport.

*Id.* at 1086. The Court concluded that Dunn's action was "ordinary conduct in the sport of karate generally, and no evidence shows intent or recklessness." *Id.* Accordingly, the Court found no breach as a matter of law and affirmed the grant of summary judgment to Dunn.

[14]     Here, C.G. was injured at a high school basketball practice during layup drills. During the drill, the coach acted as the defensive player and attempted to

defend the goal by "swatting" the player's basketball if the player did not properly perform the layup. Appellant's App. Vol. II p. 31. When the coach swatted another player's basketball, the ball hit C.G. on the head, causing a concussion. C.G. acknowledged in her deposition that getting hit on the head with a basketball was "a possible outcome of playing." *Id.* at 32.

[15] Swatting or blocking the basketball during a layup is ordinary in the sport of basketball. C.G. seemingly concedes this point. *See* Appellant's Br. p. 6 ("While it is true that 'blocking a shot' is within the ordinary conduct of basketball players, it cannot be said as a matter of law, that a Coach's aggressive shot blocking during a practice drill falls within the ordinary scope of the game."). Accordingly, pursuant to *Megenity* and *Pfenning*, if Coach Amor was a sports participant, there was no breach of duty as a matter of law unless the coach's actions were intentional or reckless. *See Megenity*, 68 N.E.3d at 1083 (holding that "a sports participant breaches no duty as a matter of law by engaging in conduct 'ordinary . . . in the sport,' but may breach a duty by injuring someone intentionally or recklessly") (quoting *Pfenning*, 947 N.E.2d at 404).

[16] C.G., however, argues that the protections described in *Megenity* and *Pfenning* do not apply to coaches, whom C.G. contends are non-participants. C.G., however, did not make this argument to the trial court and raises this argument for the first time on appeal. Accordingly, this argument is waived. *Evergreen Shipping Agency Corp. v. Djuric Trucking, Inc.,* 996 N.E.2d 337, 340 (Ind. Ct. App. 2013); *Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d

425, 438 n.2 (Ind. Ct. App. 2004) ("An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review.").

[17] Waiver notwithstanding, C.G.'s argument is unpersuasive. In support of her argument, C.G. relies on public policy considerations noted in *Pfenning* of "'affording enhanced protection against liability to co-participants in sports events.'" *Pfenning*, 947 N.E.2d at 403 (quoting *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 992 (Ind. Ct. App. 2006), *disapproved of on other grounds by Pfenning*, 947 N.E.2d 392)). C.G. also relies on *Bowman*, which noted: "[Co-participants] are not in a position, practically speaking, to protect themselves from claims. Event organizers, sponsors, and the like, are able to safeguard themselves from liability by securing waivers." According to C.G., the policy considerations of protecting co-participants are "largely absent from a case involving an adult coach's physical intervention in a youth basketball drill." Appellant's Br. p. 9.

[18] The School Corporation, however, argues that the Supreme Court has not "created an exception for coaches who are participating in drills with their players as 'non-participants' or 'quasi-participants' as contended by [C.G.]." Appellee's Br. p. 7. The School Corporation points to *Geiersbach v. Frieje*, 807 N.E.2d 114, 120 (Ind. Ct. App. 2004), *trans. denied*, *disapproved of on other grounds by Pfenning*, 947 N.E.2d 392, which addressed whether a coach, who injured a player in practice while throwing a baseball, was a "participant." The *Geiersbach* court concluded that "[t]hose participating in the event or practice should be precluded from recovering for injuries received resulting from dangers

or conduct inherent in the game unless they prove that the conduct was reckless or the injury was intentional." *Geiersbach*, 807 N.E.2d at 120. The Court applied this standard to "all participants in the sporting event" and defined participant as "any person who is part of the sporting event or practice involved. This would include players, coaches, and players who are sitting on the bench during play." *Id.*

[19] Although the Supreme Court in *Pfenning* disagreed with the "no-duty approach" used in *Geiersbach*, the Court did not disagree with or comment on the definition of "participant" set out in *Geiersbach*. *Pfenning*, 947 N.E.2d at 404 n.3. The *Pfenning* court did note that its new rule—"finding no breach by an athlete engaged in the sport's ordinary activities"—applies "to conduct of sports participants, not promoters of sporting events . . . ." *Pfenning*, 947 N.E.2d at 407. Coach Amor was not a promoter of a sporting event, and the exception noted in *Pfenning* does not apply here. Coach Amor also was not an "[e]vent organizer[ ], sponsor[ ], and the like" mentioned in *Bowman*. Rather, Coach Amor was acting as a defensive player and participating in drills during practice. The policy concerns cited by C.G. are inapplicable here. We conclude that Coach Amor was a sports participant, and the standard set forth in *Megenity* and *Pfenning* applies.

[20] Because Coach Amor was a sports participant engaging in conduct that was ordinary in the sport, there was no breach of duty as a matter of law unless Coach Amor's actions were intentional or reckless. *See Megenity*, 68 N.E.3d at 1083. C.G. acknowledged in her deposition that she does not believe Coach

Amor struck her with the basketball intentionally, and no evidence was presented to indicate intentional conduct. On appeal, C.G. makes no argument that Coach Amor struck her recklessly. Accordingly, C.G. has failed, as a matter of law, to demonstrate a breach of duty, and the trial court properly granted summary judgment to the School Corporation.

# Conclusion

The trial court properly granted summary judgment to the School Corporation on C.G.'s claim. We affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.