# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 04 2018, 7:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Roger B. Finderson
Finderson Law LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES

Michael B. Langford
R Jay Taylor, Jr.
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arnold Shepherd and
Carolyn Shepherd,

*Appellants-Plaintiffs,*

v.

Robert J. Carpenter and
KLLM, Inc.,

*Appellees-Defendants.*

December 4, 2018

Court of Appeals Case No.
18A-CT-1233

Appeal from the Kosciusko
Superior Court

The Honorable David Cates, Judge

Trial Court Cause No.
43D01-1609-CT-56

**Robb, Judge.**

# Case Summary and Issue

[1]  Following an accident involving a forklift and a semi-tractor trailer, the forklift operator, Arnold Shepherd, filed suit against the driver of the semi-tractor trailer, Robert J. Carpenter, and Carpenter's employer, KLLM, Inc. (collectively, "Defendants"). The trial court awarded summary judgment in favor of the Defendants. On appeal, Shephard argues the trial court erroneously granted summary judgment because genuine issues of material fact remain. Concluding the Defendants are entitled to judgment as a matter of law, we affirm.

# Facts and Procedural History

[2]  In the fall of 2014, Shepard was employed as a forklift driver by a processing plant owned by Creighton Brothers, LLC, d/b/a Crystal Lake, LLC ("Crystal Lake"), in Warsaw, Indiana. Shepard's primary responsibilities included loading and unloading products from trailers arriving at Crystal Lake.

[3]  Crystal Lake's loading dock includes a safety system that secures trailers in place while being loaded and unloaded. To secure a trailer, dock workers activate a metal arm which raises from the ground level below the dock bay to the space between the body of a trailer and a safety bar extending from the rear of the trailer. Once properly secured, a trailer cannot pull away from the loading dock.

[4] This safety system also includes two sets of red and green lights. The first set of lights is positioned on the interior of the dock and notifies dock workers when the trailer is secured while the second set of lights is positioned on the exterior of the dock to notify drivers. The two sets of lights work in tandem and cannot be the same color at the same time; therefore, if the driver's light is green, the dock's light is red, and if the driver's light is red, the dock's light is green. For the dock workers, a green light reflects that it is safe to load or unload the trailer. For the drivers, a green light means it is safe to pull away with a trailer.

[5] On October 23, 2014, Carpenter arrived at the Crystal Lake facility and backed his KLLM tractor trailer unit into a loading area. Carpenter set his air-brakes, exited the semi, and walked back toward the dock. Shepherd and his co-worker, Michael Williams, were waiting at the dock to load the trailer. Shepherd, whose view of the lighting system was obstructed by Williams, drove his forklift into the open trailer. Unbeknownst to Shepherd, however, Carpenter had reentered the semi, and at the moment the front wheels of Shepherd's forklift came into contact with the trailer, Carpenter pulled the trailer forward. Shepherd's forklift fell three feet to the ground between the dock bay and the rear of the trailer. His leg was broken in the fall.

[6] On September 6, 2016, Shepherd and his wife, Carolyn, filed a complaint against the Defendants alleging negligence and seeking damages for personal injuries and loss of consortium. Defendants filed a motion for summary judgment on February 28, 2018. Shepherd filed his response and designated

evidence on March 30. After a hearing, the trial court granted the Defendants' motion for summary judgment. Shepherd now appeals.

# Discussion and Decision

## I. Standard of Review

[7] Summary judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party has the initial burden to show the absence of any genuine issue of material fact as to a determinative issue. *Id*. As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id*. (quotation omitted). The burden then shifts to the non-moving party to come forward with contrary evidence showing an issue to be determined by the trier of fact. *Id.* Although this contrary evidence may consist of as little as a non-movant's designation of a self-serving affidavit, summary judgment may not be defeated by an affidavit which creates only an issue of law—the non-movant must establish that material *facts* are in dispute. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 441-42 (Ind. 2015).

[8] On appeal, we review summary judgment with the same standard employed by the trial court: relying only on the evidence designated by the parties and construing all facts and reasonable inferences in favor of the non-moving party, we will affirm the grant of summary judgment "if the designated evidentiary

matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Ind. Trial Rule 56(C); *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . or if the undisputed material facts support conflicting reasonable inferences."  *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 253 (Ind. 2015) (citation omitted).

[9]     Notably, the non-moving party has the burden of persuading us that the trial court's ruling was erroneous.  *Hughley*, 15 N.E.3d at 1003.  Mindful of Indiana's onerous and distinctive summary judgment standard aimed at protecting a party's day in court, however, we must carefully assess the trial court's decision.  *Id.*

# II. Summary Judgment

[10]    Shepherd argues the trial court erroneously granted summary judgment in favor of the Defendants.  Specifically, Shepherd claims that in response to the Defendants' motion for summary judgment, he designated several genuine issues of material fact, which must be resolved at a later trial.  The Defendants argue, not unexpectedly, that no genuine issues of material fact remain.

## A. Admissible Evidence

[11]    As an initial matter, Shepherd contends the Defendants improperly relied on the affidavit of Williams, whom Shepherd alleges is an "unavailable, unique

witness prohibited from consideration for summary judgment[.]" Amended Brief of Appellants at 25. Because Shepherd did not file a motion to strike or otherwise object to Williams' affidavit in the trial court, he has waived this issue for our review.

[12]    In support of their motion for summary judgment, the Defendants designated the affidavit of Williams, Shepherd's co-worker and the only eyewitness to the accident. Williams' affidavit provides, in relevant part:

>    On October 23, 2014, I was working on the Crystal Lake freight dock with [Shepherd], another dockhand. We were the only two dockhands in that dock area at the time. I was standing by the dock door as [Shepherd] prepared to enter a trailer on a forklift. As he approached, I noticed the interior warning light was red, indicating the dock lock was not activated and that it was not safe to enter the trailer because the trailer could move. I immediately activated the lock button to engage the dock lock; however, [Shepherd's] forklift was already entering the trailer.

>    At the exact moment [Shepherd] began to enter the trailer on the forklift, the trailer began to move forward. The movement could not have occurred if the dock lock was engaged. The trailer's forward movement caused the forklift to fall between the dock wall and rear of the trailer. [Shepherd] was injured in the fall.

>    In my experience working with the dock locks at Crystal Lake, [Shepherd] should not have entered the trailer while the interior door lock light was red, indicating the lock was not engaged and the trailer could move. In my experience, the truck driver could not have moved if the lock was engaged, but would have believed it was safe to do if the lock was not engaged because the exterior light would have displayed green.

Based on my experience and training, [Shepherd] caused his own injury. The truck driver could not have known that [Shepherd] was entering the trailer and would have believed that it was safe to pull away from the dock because he would have seen the exterior green light indicating it was safe to do so.

I informed Warehouse Manager Kevin McSherry and Plant Manager Jeff Johnson about what I saw that day. Mr. Johnson instructed me to forget what I observed.

Appellant's Appendix, Volume II at 74-75.

[13]     In ruling on a motion for summary judgment, a trial court may only consider material deemed appropriate by Indiana Trial Rule 56(E). *Duncan v. Duncan*, 764 N.E.2d 763, 766 (Ind. Ct. App. 2002), *trans. denied*. That rule provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

The affidavit requirements of Trial Rule 56(E) are mandatory and a court considering a summary judgment motion should disregard inadmissible information contained in supporting or opposing affidavits. *Id.* The party offering the affidavit into evidence bears the burden of establishing its admissibility. *Id.*

However, it is well settled that arguments not presented to the trial court on summary judgment are waived on appeal. *King v. Ebrens*, 804 N.E.2d 821, 826 (Ind. Ct. App. 2004). "A complaining party has a duty to direct the trial court's attention to a defective affidavit, and failure to raise an objection constitutes waiver." *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990). Because Shepherd did not file a motion to strike or otherwise object to Williams' affidavit in the trial court, we cannot conclude that the trial court erred in considering Williams' affidavit.[1]

## B. Negligence

Shepherd's underlying claims sound in negligence, a tort that requires (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury to the plaintiff proximately caused by the defendant's breach of duty. *E.g., Kroger Co. v. Plonski,* 930 N.E.2d 1, 6 (Ind. 2010). Duty is generally a question of law to be determined by the court while breach and proximate cause

---

[1] Furthermore, under the doctrine of invited error, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Smith v. McLeod Distrib., Inc.*, 744 N.E.2d 459, 466 (Ind. Ct. App. 2000). At the summary judgment hearing, Shepherd's counsel stated:

> I would also point out, Your Honor, with Mr. Williams since he's not around, though the affidavit is fully appropriate in a summary judgment setting, unless he's deceased, which I have no knowledge of one way or the other, that affidavit is not admissible at trial. We have tried, as I said, to take his deposition to clarify what Mr. Williams might have to say. But as it is, here at this level, I don't think we need to rely on Mr. Williams one way or the other in order to obtain the position that Mr. Carpenter breached duty.

Transcript, Volume 2 at 13. Therefore, not only did Shepherd fail to object to the affidavit, he admitted the affidavit was "fully appropriate in a summary judgment setting[.]" *Id.* In so doing, Shepherd invited any error and he cannot now complain thereof.

generally present questions of fact which must be determined by a factfinder. *E.g., Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017). "[S]ummary judgment is generally inappropriate in negligence cases because issues of contributory negligence, causation, and reasonable care are more appropriately left for the trier of fact." *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 526 (Ind. Ct. App. 2004) (citations omitted), *trans. denied*. Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004).

[16] It is uncontested that Carpenter owed Shepherd a duty to operate his semi-tractor trailer in a reasonable manner. Although the breadth of that duty is left unexplored by the parties, under Indiana tort law, except when a specific duty is declared by statute or common law, "the duty of care is well established—that which is reasonable under the circumstances." *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 270 (Ind. 2003). The Defendants' motion for summary judgment argued solely that Shepherd has failed to demonstrate a breach of duty, Appellant's App., Vol. II at 47, and, in response, Shepherd designated "six primary disputed facts[.]" Appellant's Amended Brief at 7.

### 1. Was the Interior Dock Light Green?

[17] First, Shepherd argues circumstantial evidence creates a genuine issue of material fact regarding the color of the lighting system at the time of the accident. In their motion for summary judgment, the Defendants alleged:

> Every witness—all of whom are Shepherd's co-workers—confirm that Shepherd attempted to drive his forklift onto the KLLM trailer even though Shepherd had a red light. By definition, according to the witnesses, this red light means that: (1) the trailer was not locked into the dock through the docking engagement system and (2) Carpenter, the truck driver, had a green light, which means he could drive forward. It is further undisputed that the green light / red light and docking system were fully functional and operational at the time of this incident.

Appellant's App., Vol. II at 47-48.

[18]     Indeed, Williams' affidavit provides:

> As [Shepherd] approached, I noticed the interior warning light was red, indicating the dock lock was not activated and that it was not safe to enter the trailer because the trailer could move. I immediately activated the lock button to engage the dock lock; however, [Shepherd's] forklift was already entering the trailer.

*Id.* at 74.

[19]     The accident was also captured on the facility's video system. Two supervisors who reviewed the video confirmed the interior dock light was red at the time Shepherd's forklift entered the trailer. Jeffery Johnson, Crystal Lake's plant manager, stated during his deposition:

[Johnson]:     The light [sic] my opinion of the video was that the light was red inside the building.

[Question]:     Okay, and you say that because you can see the light on the right side activated?

[Johnson]: Yes, sir.

[Question]: Is that right?  Okay.  It's black and white. Therefore, you can't pick out the colors.

[Johnson]: The videos are in color.

[Question]: Oh, they are?

[Johnson]: But, they cannot, because of the distance and because of the lighting in that room, it appears to be black and white.

[Question]: I understand now.  Okay, but the fact that it's on the right side, and that's the one that's activated, tells you he had the right, the red light?

[Johnson]: Yes, sir.

Appellant's App., Vol. III at 128.

[20] Kevin McSherry, Crystal Lake's shipping and transportation manager, agreed with Johnson's assessment of the video during his own deposition:

[Question]: Based on your investigation, do you believe that Mr. Shepherd had the green light to enter the trailer when he did?

[McSherry]: When he went across the plate, I don't believe he did.

[Question]: Why do you reach that opinion?

[McSherry]: Because, in the video, it shows differently.

*Id.* at 40.

Finally, Carpenter stated the exterior dock light was green in his interview with police following the accident. The resulting accident report states, in relevant part:

> Robert Carpenter stated he looked and observed that he had the green light to proceed to pull away from the dock. Robert Carpenter began to pull forward and then he heard a loud crashing sound.

*Id.* at 89. Therefore, Williams and Carpenter, the only eyewitnesses to the lighting system at the time of the accident testified that the interior dock light was red, and the exterior dock light was green, respectively. The fact that the interior dock light was red was also confirmed by the two witnesses who reviewed the video of the accident.

Shepherd himself was unable to state whether he had a red or a green light at the time he entered the trailer because Williams was blocking his view. Shepherd emphasizes, however, that this is distinguishable from an admission that the light was red, because:

> It is possible to deny the light was red based on the way the dock lock system worked, . . . specifically, the dock lock was activated and fully engaged in the upward "locked" position, while the crookedness of the trailer caused it to avoid being actually held fast to the dock, allowing the trailer to be pulled away from the dock.

Amended Br. of Appellants at 13.

In support of this argument that the "dock lock was activated and fully engaged in the upward 'locked' position," *id.*, Shepherd points to McSherry's deposition testimony. McSherry arrived at the scene within a minute of the accident. During his deposition, McSherry identified a photograph which depicted the dock lock mechanism in the locked position and stated that the photograph accurately depicted the post-accident scene that he had observed. Appellant's App., Vol. III at 25.

> [Question]: If Mr. Shepherd had a red light, would the trailer have been locked?
>
> [McSherry]: No.
>
> [Question]: If he had a green light, does that tell you the trailer would have been locked?
>
> [McSherry]: It tells me that the lock would be in the up position.
>
> [Question]: But, it can't tell you whether it's actually latched onto the bumper?
>
> [McSherry]: Right.
>
> [Question]: What do you think happened here?
>
> [McSherry]: It's my opinion that the lock was in the up position, but was not, due to the trailer being so crooked, was not actually hooked because as you see, the lock in

> [Defendant's Exhibit 13], there's not a lot of room for leeway there, and if that hook goes underneath the bumper, the bumper could slide right off.

*Id.* at 41-42.

[24] Thus, on one hand, McSherry's opinion was "that the lock was in the up position," while on the other hand, based upon his review of the video, McSherry stated the interior dock light was red at the time Shepherd drove his forklift into the trailer. *Id.* It is uncontested by the parties, and established by McSherry's own testimony, that "[w]hen the lock is in the up position, the [interior dock] light is green." *Id.* at 41. Therefore, to the extent McSherry offers his opinion regarding the position of the lock at the time of the accident, his deposition testimony is internally inconsistent. And, generally, a witness's inconsistent testimony cannot create a genuine issue of material fact. *Miller v. Martig*, 754 N.E.2d 41, 46 (Ind. Ct. App. 2001) (finding no issue of material fact where witness was inconsistent).

[25] In any event, the evidence presents a rather simple explanation for this apparent inconsistency. As Williams' affidavit explains, he immediately activated the locking mechanism after noticing Shepherd was approaching the trailer under a red light, but it was too late to prevent the trailer from pulling forward. This is the only evidence in the record describing how and when the dock lock was activated and why it did not secure to the trailer. Because of Williams' actions, the interior dock light would have been red at the time Shepherd entered the trailer and the lock would also have been in the locked position, i.e., the dock

light was green, as McSherry arrived on the scene of the accident moments later.

[26] Here, the Defendants designated several pieces of direct evidence that the interior dock light was red at the time Shephard entered the trailer. Shepherd, in response, designated evidence that the locking mechanism was in the upward, locked position *after* the accident. Although negligence may be proved by circumstantial evidence, *see Richter v. Klink Trucking, Inc.*, 599 N.E.2d 223, 227 (Ind. Ct. App. 1992) (noting negligence may be proved by direct or circumstantial evidence), *trans. denied,* Shepherd's circumstantial evidence fails to contradict the evidence advanced by the Defendants, and in fact, fits logically within the Defendants' theory of events. By failing to present a differing version of the facts for the trier of fact to resolve, Shepherd has failed to demonstrate a genuine question of material fact. *See, e.g., Tucher v. Brothers Auto Salvage Yard, Inc.,* 564 N.E.2d 560, 563 (Ind. Ct. App. 1991), *trans. denied.* Accordingly, we conclude Shepherd failed in his burden of persuading us that the trial court's ruling was erroneous as it pertains to the color of the interior dock light at the time of the accident. *Hughley*, 15 N.E.3d at 1003.

## 2. Was the Trailer Crooked?

[27] Arguing the color of the interior dock light is not "the only material fact" upon which summary judgment hinges, Shepherd proceeds to the question of whether Carpenter parked his trailer "extremely crooked." Amended Br. of Appellants at 16. Specifically, Shepherd argues this fact is material "in that if it was so 'extremely crooked' as to prevent the dock lock from holding the trailer,

then it combines with the other disputed facts to demonstrate Carpenter's failure to exercise reasonable care toward Shepherd." *Id*. at 16-17.

[28] In support of his argument, Shepherd points to McSherry's deposition testimony that Williams repeatedly stated "the trailer was crooked" following the accident,[2] and reemphasizes McSherry's "opinion that the lock was in the up position, but was not, due to the trailer being so crooked, was not actually hooked[.]" Appellant's App., Vol. III at 42.

[29] Notably, Shepherd's own deposition testimony contradicts his theory that the trailer was crooked. Shepherd stated:

> [Question]: Do you know why [Carpenter] moved?
>
> [Shepherd]: He said he was crooked and realigned, but everything inside lined up perfectly for him.
>
> [Question]: That does happen though right? Sometimes tractor trailer drivers do get crooked and out of line and sometimes they will move forward and readjust.
>
> [Shepherd]: He's the only one I have ever had that has ever come all the way against the dock and then pull up like that. I have had some come about half way to

---

[2] The Defendants argue Williams' out-of-court statements are inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Ind. Evidence Rule 802. However, on the facts presented, Williams' statements would be admissible at a later trial as an excited utterance. Ind. Evidence Rule 803(2) ("A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."). Thus, the trial court appropriately considered the statements on summary judgment.

the dock and see they're not straight and they would pull up and realign, but not come up all the way against the dock.

[Question]: But he was clearly not locked in. Is that right?

[Shepherd]: Apparently not.

[Question]: Because he would not have been able to move forward if he was locked in?

[Shepherd]: Sure.

[Question]: And if he was locked in there would have been a green light for you?

[Shepherd]: Yes.

Appellant's App., Vol. II at 222-23.

[30]  Even allowing for all reasonable inferences in Shepherd's favor, as we must, we still cannot conclude Shepherd has demonstrated a genuine issue of material fact. As discussed above, Shepherd has failed to produce evidence that the dock lock was activated *before* Shepherd entered the trailer. Williams' affidavit explains that he activated the dock lock *after* Shephard was approaching the trailer but that he was too late to prevent the trailer from pulling forward. Further evidence reveals the interior dock light was red as Shepherd entered the trailer and therefore, by definition, the dock lock could *not* have been activated. In the absence of such evidence, Shepherd has failed to demonstrate

Carpenter's crooked parking prevented the dock lock from holding the trailer in place. Therefore, the trial court properly granted summary judgment as to this issue.

### *3. Should Carpenter Have Pulled Forward?*

Third, Shepherd argues that regardless of the color of the dock light, Carpenter should not have backed all the way up to the dock before attempting to pull forward from the dock to correct his alignment. Once again Shepherd designates McSherry's testimony in support of this argument:

> [Question]: How often does it happen in a day that a truck driver doesn't get lined up evenly and has to sort of move back out and move back in?
>
> [McSherry]: Actually, it's pretty rare, but I don't, in a day, I don't, we probably wouldn't have one in a day at that dock. It might be one a month, or one . . .
>
> [Question]: In that particular dock?
>
> [McSherry]: Yeah. Well, in those four dock doors.
>
> [Question]: All right, so a dozen times a year that happens?
>
> [McSherry]: I think that'd be an extreme, yeah.
>
> [Question]: Well, I don't want to be extreme. I want to try to be [sic] I understand it. I'm asking you to give me your best judgement [sic], fourteen years of being

around this dock, and so what's your best judgment?

[McSherry]: Maybe eight times a year.

* * *

[Question]: Is it more common or less common for a driver to see he is going in crooked, stop, and try to correct it before he's gotten all the way to the dock itself?

[McSherry]: Oh, it's very common to correct yourself.

[Question]: So, if you see yourself going in a little bit wackajawed and crooked, you'll stop it before you even get to the dock, straighten it out, and then go back?

[McSherry]: Yeah.

[Question]: Should you be able to see whether or not you're going in crooked well before you ever get to the dock?

[McSherry]: Yeah.

[Question]: And then, indeed if you go in crooked and get all the way to the dock, and the dock workers go to work doing the things that you've trained them to do, they could put that locking arm up, and not secure that trailer?

[McSherry]: That's right.

Appellant's App., Vol. III at 58-59; 75-76.

[32] It appears Shepherd's argument is that, because efforts to realign trailers after they have backed all the way up to the dock only occur approximately eight times per year, it is foreseeable that dock workers could mistakenly enter crookedly-parked trailers before they are realigned. However, the evidence establishes the red and green light safety system is used to prevent exactly that. And, once again, because the uncontroverted evidence establishes the interior dock light was red at the time Shepherd entered the trailer, we conclude Shepherd has failed to demonstrate a genuine issue of material fact.

### 4. Could Carpenter See the Exterior Dock Light?

[33] Fourth, Shepherd alleges Carpenter could not have seen whether the exterior dock light was green because of "his crooked parking[.]" Amended Br. of Appellants at 18. Shepherd again points to McSherry's testimony:

> [Question]: Is there any way based on where he is in this cab that he could possibly have seen Mr. Shepherd's forklift move into the trailer?
>
> [McSherry]: No.
>
> [Question]: Why is that?
>
> [McSherry]: The mirrors on the truck look down the side of the trailer, and [Shepherd] was going into the center of the trailer, and he wouldn't have seen that. He was so crooked, I question whether he could even see the light on the wall of . . .

[Question]: But, you don't know one way or the other. Right?

[McSherry]: I do not know.

Appellant's App., Vol. III at 82.

[34] It appears that Shepherd intended for McSherry's testimony to provide an opinion as a lay witness. Indiana Evidence Rule 701 provides:

> If the witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

An opinion under this rule is rationally based, for purposes of this rule, if a reasonable person normally could form the opinion from the perceived facts. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 769 (Ind. Ct. App. 2003). An opinion is helpful, for purposes of the rule, if the testimony gives substance to facts, which were difficult to articulate. *Id*.

[35] Here, McSherry did not provide an opinion as a lay witness; rather, McSherry simply "question[ed] whether [Carpenter] could even see the light on the wall[.]" Appellant's App., Vol. III at 82. It is well established that "guesses, supposition and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment." *Midwestern Indem. Co. v. Sys. Builders, Inc.*, 801 N.E.2d 661, 666 (Ind. Ct. App. 2004), *trans. denied*. Put simply, McSherry's questioning of Carpenter's line of vision is insufficient to create a genuine issue of material fact.

### 5. Was the Dock Lock Was Engaged?

[36] For his fifth issue, Shepherd simply rehashes his argument regarding Carpenter's crooked parking, alleging the dock lock could have been engaged without latching onto the trailer to prevent it from moving forward and Shepherd would have therefore had a green light. Although the record establishes the possibility of this scenario, the uncontroverted evidence reveals the dock lock was not engaged as Shepherd entered the trailer. As discussed above, the interior dock light was red and Williams "immediately activated the lock button to engage the dock lock; however, [Shepherd's] forklift was already entering the trailer." Appellant's App., Vol. II at 74. Thus, the evidence demonstrates it was the trailer pulling forward, not the trailer's alignment, that prevented the dock lock from actively engaging.

### 6. Could Carpenter Have Felt Shepherd's Forklift?

[37] Finally, Shepherd alleges Carpenter knew, or should have known, that he was operating his forklift in the trailer. While Shepherd's deposition testimony conceded that Carpenter could not have seen him using the semi's side mirrors, Shepherd nevertheless argues Carpenter would have "felt the weight of the fork lift . . . [t]he weight going onto the trailer." *Id.* at 195.

[38] First, as explained above, opinion testimony by lay witnesses is limited to opinions rationally based on the witness's own personal observation, knowledge, and experience. Ind. Evid. R. 701(a); *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743 (Ind. Ct. App. 1998), *trans. denied*. There is no

evidence Shepherd has ever driven a semi and there is similarly no evidence that Shepherd has ever been in the cab of a semi. Thus, Shepherd's speculation as to what Carpenter would have or should have felt in the cab is insufficient to create a genuine issue of material fact. *Midwestern Indem. Co.*, 801 N.E.2d at 666.

[39] In any event, Shepherd stated the trailer "went down a little" as his front wheels came into it, but that there was no "shaking or disturbance of the trailer at all[,]" and Shepherd had no idea if his entry had any effect on the trailer nearer the semi. Appellant's App, Vol. II at 233. Moreover, the evidence establishes an almost simultaneous series of events where Shepherd drove onto the trailer just seconds before Carpenter pulled forward. On this evidence, no reasonable jury could conclude Carpenter should have known there was a forklift in the trailer—or could have known a forklift was in the trailer in time to prevent an accident such as this. Accordingly, Shepherd has again failed to demonstrate a genuine issue of material fact precluding summary judgment.

# Conclusion

[40] The uncontroverted evidence demonstrates that Shepherd entered the trailer under a red light. For this and other reasons more thoroughly explained above, the Defendants are entitled to judgment as a matter of law and we therefore affirm the trial court's grant of summary judgment.

[41] Affirmed.

Baker, J., and May, J., concur.